## PENNIE v. REIS.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 1260.  Submitted December 2, 1889. — Decided December 16, 1889.

When a pleading misstates the effect and purpose of a statute upon which the party relies, a demurrer to it does not admit the correctness of the construction, or that the statute imposes the obligations or confers the rights which the party alleges.

The legislature of California, in 1878, enacted a statute which provided for the payment of the police force of San Francisco at a rate "which should not exceed $102 a month for each one," subject to the condition that the treasurer of the city and county "should retain from the pay of each police officer the sum of two dollars per month to be paid into a fund to be known as the police life and health insurance fund." The act further provided that upon the death of any member of the police force after June 1, 1878, there should be paid by said treasurer out of said life and health insurance fund to his legal representative the sum of $1000. On the 4th of March, 1889, this act was repealed and another statute enacted

creating " a police relief and pension fund," and transferring to it the police life and health insurance fund, which had been created under the other act, and making new and different provisions for the distribution of the new fund. W. was a police officer of the city and county from 1869 until his death on March 13, 1889, after the repealing act had gone into operation. His administrator sued to recover $1000 from the police life and health insurance fund, which then amounted to $40,000; *Held*, that this fund was a public fund, subject to legislative control, and that W. had no vested interest in it, which could not be taken away by the legislature during his lifetime.

THE court, in its opinion, stated the case as follows:

This case comes from the Supreme Court of the State of California. The petitioner is the administrator of one Edward A. Ward, deceased, who was a police officer of the city and county of San Francisco from the 24th of September, 1869, until his death, which occurred on the 13th of March, 1889.

On the 1st of April, 1878, an act of the legislature of California was approved, entitled, " An act to enable the Board of Supervisors of the city and county of San Francisco to increase the police force of said city and county, and provide for the appointment, regulation and payment thereof." Statutes of California of 1877, p. 879. The first section of this act authorized the Board of Supervisors to increase the existing force of the police, which consisted of one hundred and fifty members, not exceeding two hundred and fifty more; the whole number not to make in all more than four hundred; and provided that they should be appointed and governed in the same manner as the then existing force. The second section declared that the compensation of the two hundred and fifty, or such part thereof as the board might allow, should not exceed $102 a month for each one, and that the compensation of those then in office should continue at the rate prescribed by the acts under which they were appointed until June 1, 1879, when their pay should be fixed by a board of commissioners created under the act; that the police officers then in office should be known as the " old police," and those appointed under the act as the " new police;" and that the officers subsequently appointed to fill vacancies on the old police should receive the

same pay as the new police, subject to the condition that the treasurer of said city and county should "retain from the pay of each police officer the sum of two dollars per month, to be paid into a fund to be known as the 'police life and health insurance fund,'" to be administered as provided in the act. The mayor, auditor and treasurer of the city and county of San Francisco were constituted a board to be known as the " police, life and health insurance board," and required from time to time to invest, as it might deem best, the moneys of the police life and health insurance fund in various designated securities, to be held by the treasurer, subject to the order of the board. The act declared that upon the death of any member of the police force, after the first day of June, 1878, there should be paid, by the treasurer, out of the said life and health insurance fund, to his legal representative, the sum of one thousand dollars; that in case any officer should resign from bad health or bodily infirmity, there should be paid to him, from that fund, the amount of the principal which he may have contributed thereto; and that, in case such fund should not be sufficient to pay the demand upon it, such demand should be registered and paid in the order of its registry, out of the funds as received. Ward having been a police officer whilst this act was in force, the administrator of his estate demanded of the treasurer the one thousand dollars provided by it. There was in the treasury at the time the sum of forty thousand dollars. The treasurer having refused to pay the demand, the administrator applied to the Supreme Court for a writ of mandate upon him to compel its payment. To the petition for that writ the treasurer demurred on the ground that it did not state facts sufficient to constitute a cause of action; or entitle the petitioner to the writ of mandate, or to any relief whatever; and that the act of the legislature, passed March 4, 1889, entitled " An act to create a Police Relief Health and Life Insurance and Pension Fund in the several counties, cities and counties, cities and towns of the State," was a valid and constitutional enactment. Statutes of California, 1889, p. 56. This act creates a board of trustees of the police relief and pension fund of the police department in each

county, city and county, city or town, to be known as the board of police pension fund commissioners; and provides for its organization and the administration of the fund, and for pensions to officers over sixty years of age, who have been in the service over twenty years, to those who have become physically disabled in the performance of their duties, and to the widows and children of those who lose their lives in the discharge of their duties, and for the payment of certain sums of money to the widows or children of those who die from natural causes after ten and less than twenty years' service, and regulates the evidence of disability; and that retired officers shall report to the chief of police at certain stated periods, and perform duty under certain circumstances, and for the forfeiture of pensions by misconduct, and for the meetings of the board, and prescribes their duties as to the fund.

Sections 12 and 13 of the act are as follows:

" SEC. 12. The Board of Supervisors, or other governing authority, of any county, city and county, city or town shall, for the purposes of said 'Police Relief and Pension Fund' hereinbefore mentioned, direct the payment annually, and when the tax levy is made, into said fund of the following moneys:

" *First.* Not less than five nor more than ten per centum of all moneys collected and received from licenses for the keeping of places wherein spirituous, malt, or other intoxicating liquors are sold.

" *Second.* One-half of all moneys received from taxes or from licenses upon dogs.

" *Third.* All moneys received from fines imposed upon the members of the police force of said county, city and county, city or town, for violation of the rules and regulations of the police department.

" *Fourth.* All proceeds of sales of unclaimed property.

" *Fifth.* Not less than one-fourth nor more than one-half of all moneys received from licenses from pawnbrokers, billiard-hall keepers, second-hand dealers, and junk stores.

" *Sixth.* All moneys received from fines for carrying concealed weapons.

" *Seventh.* Twenty-five per centum of all fines collected in

money for violation of county, city and county, city or town ordinances.

"*Eighth.* All rewards given or paid to members of such police force, except such as shall be excepted by the chief of police.

"*Ninth.* The treasurer of any county, city and county, city or town shall retain from the pay of each member of police department the sum of two dollars per month, to be forthwith paid into said police relief and pension fund, and no other or further retention or deduction shall be made from such pay for any other fund or purpose whatever.

"SEC. 13. Any Police, Life, and Health Insurance Fund, or any fund provided by law, heretofore existing in any county, city and county, city or town for the relief or pensioning of police officers, or their life or health insurance, or for the payment of a sum of money on their death, shall be merged with, paid into, and constitute a part of the fund created under the provisions of this act; and no person who has resigned or been dismissed from said police department shall be entitled to any relief from such fund: *Provided,* That any person who, within one year prior to the passage of this act, has been dismissed from the police department for incompetency or inefficiency, and which incompetency or inefficiency was caused solely by sickness or disability contracted or suffered while in service as a member thereof, and who has, prior to said dismissal, served for twelve or more years as such member, shall be entitled to all the benefits of this act."

The act also repealed all acts or parts of acts in conflict with its provisions. Under this act the treasurer refused to pay the money demanded by the administrator of Ward. The Supreme Court of the State held that this latter act was a valid law, and that it repealed the former act, and denied the prayer of the petitioner and dismissed the writ.

From that judgment the administrator has brought the case to this court on a writ of error.

*Mr. Alfred Clarke* and *Mr. James A. Johnson* for plaintiff in error.

*Mr. Davis Louderback* and *Mr. W. W. Morrow* for defendant in error.

Mr. JUSTICE FIELD, after stating the case as above, delivered the opinion of the court.

It was contended in the court below that this latter act of March 4, 1889, violated that provision of the Constitution of the United States, and of the State, which declares that no person shall be deprived of his property without due process of law. The Supreme Court of the State held that this contention went on the theory that the deceased police officer had, at the time of his death, a vested property right in the one thousand dollars of public money which the former statute had directed to be paid to his legal representative upon his death. The petitioner now insists that this statement of his contention below is erroneous; that he did not then contend and does not now contend that the fund in the hands of the treasurer was public money, but private money accumulated from the contributions of the members of the police force, and that by Ward's contribution the sum claimed became, on his death, — like money due on a life insurance policy — property of his estate. Such, at least, is his position, if we rightly understand it. Some plausibility is given to it by the language of the petition to which the treasurer demurred. The petition alleges that Ward, the deceased, contributed, out of his salary as a police officer, to the police life and health insurance fund, the sum of two dollars per month for each month from April 1, 1878, to and including the month of March, 1889, and that the whole amount of his contribution to that fund was $264; that, upon his death, there was due to the petitioner, as the legal representative of Ward, the sum of one thousand dollars, payable out of that fund; that it was the duty of the treasurer of that fund to pay it; and that there was in his possession, at the time, forty thousand dollars applicable to its payment.

The petitioner now contends that these several allegations are to be taken as literally true, from the fact that the treasurer demurred to the petition. But a demurrer admits only

allegations of fact and not conclusions of law. When therefore a plaintiff relies for recovery upon compliance with the provisions of a statute, and attempts to set forth conformity with them, the court will look to that statute and take the allegations as intended to meet its provisions, notwithstanding the inaccuracy of any statement respecting them. If the pleading misstates the effect and purpose of the statute upon which the party relies, the adverse party, in demurring to such pleading, does not admit the correctness of the construction, or that the statute imposes the obligations or confers the rights which the party alleges. *Dillon* v. *Barnard,* 21 Wall. 430, 437. Notwithstanding, therefore, in this case, the petitioner avers that the deceased police officer contributed out of his salary two dollars a month, pursuant to the law in question, and, in substance, that the fund which was to pay the one thousand dollars claimed was created out of like contributions of the members of the police, the court, looking to the statute, sees that, in point of fact, no money was contributed by the police officer out of his salary, but that the money which went into that fund under the act of April 1, 1878, was money from the State retained in its possession for the creation of this very fund, the balance — one hundred dollars — being the only compensation paid to the police officer. Though called part of the officer's compensation, he never received it or controlled it, nor could he prevent its appropriation to the fund in question. He had no such power of disposition over it as always accompanies ownership of property. The statute, in legal effect, says that the police officer shall receive as compensation, each month, not exceeding one hundred dollars, or such sum as may be fixed after June 1, 1879, by a board of commissioners created under the act, and that, in addition thereto, the State will create a fund by appropriating two dollars each month for that purpose, from which, upon his resignation for bad health or bodily infirmity, or dismissal for mere incompetency not coupled with any offence against the laws of the State, a certain sum shall be paid to him, and, upon his death, a certain sum shall go to his legal representative.

Being a fund raised in that way, it was entirely at the disposal of the government, until, by the happening of one of the events stated — the resignation, dismissal, or death of the officer — the right to the specific sum promised became vested in the officer or his representative. It requires no argument or citation of authorities to show, that in making a disposition of a fund of that character, previous to the happening of one of the events mentioned, the State impaired no absolute right of property in the police officer. The direction of the State, that the fund should be one for the benefit of the police officer or his representative, under certain conditions, was subject to change or revocation at any time, at the will of the legislature. There was no contract on the part of the State that its disposition should always continue as originally provided. Until the particular event should happen upon which the money or a part of it was to be paid, there was no vested right in the officer to such payment. His interest in the fund was, until then, a mere expectancy created by the law, and liable to be revoked or destroyed by the same authority. The law of April 1, 1878, having been repealed before the death of the intestate, his expectancy became impossible of realization; the money which was to pay the amount claimed had been previously transferred and mingled with another fund, and was no longer subject to the provisions of that act. Such being the nature of the intestate's interest in the fund provided by the law of 1878, there was no right of property in him of which he or his representative has been deprived.

If the two dollars a month, retained out of the alleged compensation of the police officer, had been in fact paid to him, and thus become subject to his absolute control, and after such payment he had been induced to contribute it each month to a fund on condition that, upon his death, a thousand dollars should be paid out of it, to his representative, a different question would have been raised, with respect to the disposition of the fund, or at least of the amount of the decedent's contribution to it. Upon such a question we are not required to express any opinion. It is sufficient that the two dollars retained from the police officer each month, though called in

the law a part of his compensation, were, in fact, an appropriation of that amount by the State each month to the creation of a fund for the benefit of the police officers named in that law, and, until used for the purposes designed, could be transferred to other parties and applied to different purposes by the legislature.

*Judgment affirmed.*