# MACFARLAND *v.* BIEBER.

PENSIONS; FIREMEN; STATUTES.

1. Under the acts of Congress of February 25, 1885 (23 Stat. at L. 317, chap. 145), and June 11, 1896 (29 Stat. at L. 405, chap. 419), requiring the commissioners of the District of Columbia to deduct $1 each month from the pay of each fireman for the creation of a relief fund from which a pension shall be paid firemen so permanently disabled from injuries or disease contracted in the line of duty as to be discharged from the service therefor, a fireman discharged for such a cause, and pensioned, does not acquire a vested property right to his pension which cannot be devested by a subsequent act of Congress.

2. The requirement of the act of Congress of May 26, 1908 (— Stat. at L. —), that police and fire department pensioners of the District shall, within thirty days after the passage of the act, and every two years thereafter, undergo a medical examination, upon the result of which the commissioners shall determine whether the pension being paid in each case shall continue in whole or in part, is a reasonable one, and, on such a pensioner's failure to submit to such an examination when notified to do so, the commissioners have the right to discontinue his pension.

3. A notice by the commissioners to a fire department pensioner to appear before the board of police and fire surgeons on a specified date and hour, and submit to the examination provided for by the act of May 26, 1908, is a sufficient notice, and the commissioners are justified in discontinuing the pension of such a pensioner on his failure to appear before the board, without notifying him further to appear and show cause why an order should not be made discontinuing the payment of his pension; it not being within the power of such a pensioner to defeat the operation of the statute by refusing to appear before the medical board.

No. 1970. Submitted January 5, 1909. Decided February 2, 1909.

HEARING on an appeal from an order of the Supreme Court of the District of Columbia directing the issuance of the writ of mandamus against the commissioners of the District of Columbia. *Reversed.*

The COURT in the opinion stated the facts as follows:

This was an action brought in the supreme court of the District of Columbia for a writ of mandamus to compel Henry B. F. Macfarland, Henry L. West, and Jay J. Morrow, commissioners of the District of Columbia, to restore the name of petitioner, Sidney Bieber, to the roll of pensioners on the firemen's relief fund, from which roll his name had been stricken by order of the commissioners on July 29, 1908. The principal facts are undisputed. Appellee was a fireman on the force of the District from July 1, 1901, to August 30, 1905. At the latter date he held the position of fire marshal, a position on the force ranking above that of captain. He was retired from the service, upon his own application, because of disease contracted in line of duty. By the order of the commissioners discharging him, he was granted a pension of $90 per month, payable from the firemen's relief fund, on and after September 1, 1905. This pension was paid to him up to and including July 29, 1908, when payment was discontinued by the order of the commissioners above referred to.

The fund out of which appellee claims he is entitled to be paid was created by act of Congress of February 25, 1885 (23 Stat. at L. 317, chap. 145), which provided, among other things, "that hereafter the commissioners shall deduct $1 each month from the pay of each fireman, which sum so deducted shall be kept as a firemen's relief fund." By the act of Congress of June 11, 1896 (29 Stat. at L. 405, chap. 419), the deduction of $1 from the pay of each fireman was continued, and it was provided that the fund should be "used for the relief of any fireman who, having served not less than twelve months, shall, by reason of injuries received or disease contracted in the line of actual fire duty,  *   *   *   become so permanently disabled as to be discharged from service therefor." The limit of the relief provided by this statute was placed at $50 per month, and any deficiency in the relief fund was required to be made up by appropriating to the fund, police court fines. The law was further amended by the act of Feb-

ruary 28, 1901·(31 Stat. at L. 820, chap. 623), where it was provided that deficiencies in the relief fund were to be made up by the addition of receipts from dog˙ licenses. By this act it was further provided "that the chief engineer of the fire department and the superintendent, assistant superintendent, any captain or lieutenant of police, in case of retirement as now provided by law, shall receive relief not exceeding $100 per month."

The law existed, as above outlined, at the time the appellee retired from the service and was placed by order of the commissioners on the pension roll at the rate of $90 per month. The appropriation act of May 26, 1908, after making appropriations for the metropolitan police, provided: "Provided, further, that within thirty days after the passage of this act, and every two years thereafter, persons on the pension rolls in the District of Columbia for disabilities˙ incurred while in the service of the police department or fire department of the District of Columbia, shall undergo a medical examination, and as a result of such examinations the commissioners shall determine whether the pension being paid in each case shall continue in whole or in part."

It appears that, on May 29, 1908, the commissioners passed the following order:

"Ordered: That in order to comply with the following provision in the act "making appropriations to provide for the expenses of the government of the District of Columbia for the fiscal year ending June thirtieth, nineteen hundred and nine, and for other purposes," approved May 26, 1908,—

"*Provided,* That within thirty days after the passage of this act, and every two years thereafter, persons on the pension rolls in the District of Columbia for disabilities incurred while in the service of the police department or fire department of the District of Columbia shall undergo a medical examination, and as a result of such examinations the commissioners shall determine whether the pension being paid in each case shall continue in whole or in part. The board of police and fire surgeons shall conduct the medical examination therein pre-

scribed; and said board shall be furnished by the auditor with a list of all persons drawing pensions for disabilities, and shall notify all such persons to appear before the board at the time and place to be specified in the notice."

On June 5th appellee was served with the following notice:

Washington, D. C., June 5, 1908.

Sidney Bieber,
    630 G. St. S. E., Washington, D. C.

Sir:—The act making appropriations to provide for the expenses of the government of the District of Columbia for the fiscal year ending June thirtieth, nineteen hundred and nine, and for other purposes, approved May 26, 1908, contains the following provision:

"*Provided,* That within thirty days after the passage of this act, and every two years thereafter, persons on the pension rolls in the District of Columbia for disabilities incurred while in the service of the police department or fire department of the District of Columbia shall undergo a medical examination, and as a result of such examinations the commissioners shall determine whether the pension being paid in each case shall continue in whole or in part."

In compliance with this law the commissioners of the District of Columbia have directed the board of police and fire surgeons to conduct the medical examination required by the statute, and for the purpose of undergoing such medical examination you are requested to appear at the room in the police court building known as the police trial room, on June 19, 1908, at 1: 30 o'clock P. M.

Very respectfully,
Edmund Barry, M. D.
Secretary Board of Police and Fire Surgeons.

Appellee failed to appear for examination in accordance with the above notice. He not only failed to furnish any excuse for not appearing for an examination, but ignored the whole proceedings. The commissioners, on July 29, 1908,

passed an order terminating the pension, the order reciting in full the failure of the appellee to appear and undergo the medical examination as required by law. Thereupon the appellee filed his petition for a writ of mandamus in the court below, which was answered by the appellants. The appellee demurred to the answer on the ground that it showed no authority for the action of the commissioners in removing his name from the pension rolls. Upon the facts set forth in the petition and answer, the court entered a decree granting the writ, from which judgment the case comes here on appeal.

*Mr. E. H. Thomas,* Corporation Counsel, for the appellants.

*Mr. A. A. Birney* and *Mr. H. F. Woodard,* for the appellee:

1. Appellee, having retired from the fire service upon the faith of an act of Congress which provided that upon such discharge he should thereafter receive such monthly pay (or pension) as the commissioners should at that time fix, had a vested right of property, of which even Congress might not deprive him. At the time of his enlistment the statute provided for a pension in case of discharge because of injury or disease, and when he was, in fact, discharged for that cause, and the amount of his pension determined, the contract between him and the District was complete, and it may not now be destroyed. *Pennie* v. *Reis,* 132 U. S. 464.

2. The judgment of the commissioners who discharged the petitioner, that his monthly pension should be $90, was a quasi judicial judgment, binding upon them and their successors. No right of review remained. *Eddy Trustees* v. *People,* 218 Ill. 611; *United States* v. *Arredondo,* 6 Pet. 729; *Decatur* v. *Paulding,* 14 Pet. 599. In certain cases, the courts have said: "No pensioner has a vested legal right to his pension. Pensions are the bounties of the government, which Congress has the right to give, withhold, distribute, or recall at its discretion." *United States* v. *Teller,* 107 U. S. 64, 68; *Frisbie* v. *United States,*

157 U. S. 166. But these cases, and others like them, deal with pensions to soldiers, provided for and allowed after the service rendered, and having no element of a contract, as in this case.

3. The act of 1908 by its terms limits the right of determination by the commissioners whether the pension in each case shall continue in whole or in part, to cases where the pensioner has been examined. The language is, "and as a result of such examinations the commissioners shall determine," etc. They have no right to determine anything except "as a result of such examinations." The petitioner was not examined. The order discontinuing the pension was made, therefore, without even apparent authority, and is void for that reason. The commissioners evidently thought Congress had intended to provide a penalty for failure to submit to the required examination, but the statute does not so declare, and the commissioners are not warranted in assuming either that there was such intention, or that the penalty, had one been provided, would have been so severe as forfeiture of the entire pension.

4. So, too, there was no notice to appellee that failure to submit himself to medical examination would be treated as a forfeiture of his pension. No order to show cause was passed, nor was he given an opportunity at any time to be heard why this valuable right should not be taken from him, but only upon a report that the pensioner had not undergone the directed medical examination the commissioners summarily, and upon this ground struck his name from the roll. It is submitted that the right to be heard before one may be thus devested of a thing of value is fundamental.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The sole question presented by the record in this case is whether or not appellee acquired such a vested right in the pension granted by the act of Congress as could not be devested by a subsequent act of Congress. It is contended that the provision of the act of Congress requiring the commissioners to deduct from the compensation of appellee, while on the fire

force, $1 per month, to be placed in the general relief fund, gave appellee an interest in that fund which ripened into a vested property right to the pension in question on his retirement from the service. The point here under consideration is fully disposed of by the Supreme Court of the United States in *Pennie* v. *Reis*, 132 U. S. 464, 33 L. ed. 426, 10 Sup. Ct. Rep. 149. In that case an act of the State of California providing for the reorganization of the police force of the city and county of San Francisco, among other things, required the treasurer of said city and county to "retain from the pay of each police officer the sum of $2 per month to be paid into a fund to be known as the police life and health insurance fund." It was also provided that, upon the death of any member of the police force after the 1st day of June, 1878, there should be paid out of said fund, to his legal representatives, the sum of $1,000 and should any officer resign, by reason of bad health or bodily infirmity, there should be paid to him from said fund the amount of principal which he may have contributed to it. By a subsequent act of the State legislature, the insurance feature of the prior act was abolished, and the act changed in many other particulars. Subsequent to the passage of this act, a policeman who had been continuously in the service during the existence of the former act, and from whose compensation $2 per month had been deducted and placed in the fund, died; and his administrator brought suit to compel the treasurer to pay out of the fund thus created and in his hands the sum of $1,000. It was contended in that case that the deduction of $2 per month from the compensation of the policeman during his term of service, and the depositing of this amount in the fund, gave him a property right in the fund, which, upon his death, vested in his estate to the amount of the insurance provided for in the act under which the fund was created. The court held that the $2 deducted from his compensation each month was not a contribution by the policeman to the fund, but was an amount set apart by the State to create the fund, and that the fund thus created was subject to the control of the State. It held that no property right in

the fund became vested until the happening of a certain event, to wit, the death of the person having this prospective interest in the fund. But the law as to its insurance feature had been repealed by the legislature of California prior to the death of the policeman in question, and the court held that he acquired no vested interest whatever in the fund, and that his estate was not entitled to the insurance.

In the case at bar, it is contended by counsel for appellee that the above case is not directly in point, and that here the contingency necessary to give appellee a vested property right in the fund had happened before the passage of the act of Congress requiring pensioners to subject themselves to medical examination, and that, having vested, it was beyond the power of Congress to destroy that right. With this contention, we cannot agree. The contingency in the case at bar which gave appellee a property right in the fund in question was one continuing by the grace of Congress, subject to be discontinued or terminated at any time by Congress. His rights in the premises were not different or superior to those of a pensioner under the general pension laws of the United States. Referring to military pensioners, the court in *United States* v. *Teller,* 107 U. S. 64, 27 L. ed. 352, 2 Sup. Ct. Rep. 39, said: "No pensioner has a vested legal right to his pension. Pensions are the bounties of the government, which Congress has the right to give, withhold, distribute, or recall at its discretion." It was held by this court in *Lochren* v. *United States,* 6 App. D. C. 486, that there was not only no vested right in the claim for a pension, but that the granting of a pension was subject to review or reconsideration for illegality or error.

The fund out of which the pension of appellee was paid was created by Congress from the deductions from salaries and from certain fines and licenses. The situation was the same as if Congress had created this fund by direct appropriation, as it does the fund out of which military pensions are paid. No pensioner acquires any vested right in future pension payments or instalments insured by law, which Congress may not take away absolutely, or by a provision that such payments

shall be made only upon the pensioner's complying with certain specified requirements, as, in the present case, subjecting himself to a medical examination. The $1 per month was not contributed by appellee to the relief fund. It never came into his possession or under his control. If it had, and he had contributed it to the fund, as suggested in *Pennie* v. *Reis*, 132 U. S. 464, 33 L. ed. 426, 10 Sup. Ct. Rep. 149, we would be confronted by a very different question. The money was placed in the fund by the designated agent of the government, and it was at all times subject to the control of Congress.

A pension is not granted because of any property right the pensioner has or may acquire in it, but purely as an act of gratitude from the bounty of the government. The liability of the government to appellee was measured by the amount it owed him under existing law at the time Congress, by subsequent act, provided that further payments should cease upon his failure to comply with its provisions. Any amount due appellee at the time of the happening of the event (the making of the order discontinuing his pension), had vested, and could not be withheld. In this respect, the case at bar does not differ from the California case above cited. There, the right to the insurance vested at the death of the insured, provided the law was still in force. The whole of the amount of the insurance at once became due and payable. Here, all that had become vested was the amount of the pension due and payable on the date of its discontinuance by the order of the commissioners.

The requirement to appear for a medical examination was a reasonable one. It was for the protection of the government, since the pensions were only to be paid to policemen and firemen suffering from disabilities incurred while in its service. Appellee by his failure to appear and submit to this examination when notified, or to show cause why he failed to appear, placed in the hands of the commissioners the power to reduce or discontinue further payments of the pension. There was no basis upon which they could estimate a reduction, and

his failure to appear was sufficient, after notice, to create the presumption that his health had been entirely restored, and that the disabilities for which the pension was originally granted no longer existed.

It was contended by counsel for appellee in the argument before us, apparently for the first time so far as the record discloses, that the notice given appellee was insufficient to warrant the commissioners in ordering the payment of his pension discontinued. It was insisted that the notice given only required him to appear before the medical board, and that, before the commissioners could legally act in the premises, they should have notified him to appear to show cause why an order should not be made discontinuing payments. We think this additional notice was unnecessary. The only hearing accorded him by the terms of the act was the one before the board of fire and police surgeons. Of this he had ample notice. The notice given contained on its face the act of Congress. It was a summons to appear in a proceeding that might result in the reduction of his pension or in the withholding of payment entirely. The only judgment that could directly affect him was the decision of the commissioners, and of that he was fully apprised in the notice given. We are unable to find where there was any failure to accord appellee due process of law in this proceeding.

But it is contended by counsel for appellee that until the medical board had actually examined appellee and made a report of such examination to the commissioners, there was nothing before the commissioners upon which they could act; in other words, that appellee, by his refusal to appear before the medical board, could totally defeat the operation of the law. This would be equivalent to holding that a defendant could defeat an action brought against him in court by failure to appear. The sole object of preliminary notice is to bring the party personally or constructively before the court, so that the court may exercise jurisdiction over him at all stages of the proceedings. The notice given in this case was for the purpose of bringing the appellee before the medical board, in order that the commis-

sioners would have jurisdiction to consider his case and enter an order accordingly. The notice was sufficient for this purpose, and it was not in the power of appellee to defeat the operation of the law by refusing to appear before the medical board.

The judgment of the trial court is reversed, with costs, and remanded, with directions to discharge the writ and dismiss the petition.                                   *Reversed.*

A writ of error to the Supreme Court of the United States was allowed March 2, 1909.