The bill is filed by a large number of members of the Atlantic City fire department, and by the Atlantic City Fire Department *Page 474 
Pension Fund, which will hereafter be called the Pension Fund, a corporation organized in accordance with the provisions of chapter 65 of the laws of 1905, its amendments and supplements.
The Pension Fund owned and had in its possession as of January 5th, 1921, moneys and securities amounting to $150,326.10.
The city of Atlantic City under the provisions of chapter 160
of the laws of 1920 (P.L. 1920 p. 324), organized the "Pension Commission of the Police and Fire Department of the City of Atlantic City," which will be hereafter called the Commission.
This act provides "for the retirement of policemen and firemen of police and fire departments of municipalities of this state and a pension for retired or disabled policemen and firemen, their widows, children," c. The act provides, in the fifth section thereof, for the establishment of a pension commission of five members. In the seventh section thereof it is provided that "whenever there is established in municipalities a fund for the retiring and pensioning of members of the police and fire departments thereof, the boards and bodies having control of the same are hereby vacated and all pension and retirement funds in their hands or under their control shall be turned over and come under the control and regulation of this act." The act further provides, in the ninth section, "that it shall take effect immediately in every municipality in which a fund for the retirement or pension of policemen or firemen or either is now in effect, but shall not take effect in other municipalities until adoption by the voters at a general election or special election called for such purpose. The act became operative in Atlantic City without adoption by a majority of the voters, as there existed in that city funds for the retiring and pensioning of both policemen and firemen. The city of Atlantic City, under the act of 1920, established the Pension Commission of the Police and Fire Department of the City of Atlantic City."
Upon the firemen's pension fund refusing the demand of the joint pension commission to turn over to it the fund in *Page 475 
the Pension Fund, application was made to the supreme court of New Jersey for a writ of mandamus, and on March 22d 1922, the said supreme court, by a rule directed that a preemptory writ ofmandamus issue requiring the surrender of said securities to the joint pension commission. On appeal, the court of errors and appeals affirmed the judgment of the supreme court.
On September 12th, 1923, the Atlantic City Fire Department Pension Fund, in obedience to the command of the writ, did deliver and sign over to the Pension Commission of the Police and Fire Department of the City of Atlantic City the sum of $135,296.71, with a return stating in a general way from what sources the said funds were obtained and a request that it be advised in what manner the Commission intended to administer said fund. Upon notice, the supreme court, on November 20th, 1923, directed that said return should be stricken, and on March 5th, 1924, the Pension Fund made return that it had turned over to the Commission the said sum "representing the entire fund belonging to the Atlantic City Fire Department Pension Fund after deducting legal disbursements."
The prayers of the complainants' bill are —
"2. That it may be declared that the rights and interests of the complainants are in accordance with the terms of the act of 1905, and that the said complainants are entitled to participate in the benefits incurred by said act and not the act of 1920.
"3. That it may be decreed that the funds and securities turned over by the firemen's pension fund are to be used and administered by the defendant as trustee, for the exclusive benefit of the complainants, or
"3A. That it be decreed that should the city of Atlantic City fail hereafter to provide funds by taxes, or otherwise, to pay benefits to the complainants and the policemen of said city under the act of the legislature, that the benefits to the complainants and their dependents be first paid out of the income derived from the funds turned over to the joint pension commission as within set forth. *Page 476 
 "4. That it be decreed that the said moneys and securities be used and administered in accordance with the terms of the act of 1905, and that the benefits and pensions be paid to the said complainants or their dependents in accordance with the terms of the act of 1905, and not in accordance with the terms of the act of 1920.
"5. That it be decreed that the complainant Clara Hubbard, as the dependent of Lewis Hubbard, be entitled to receive $1,300, her income under the act of 1905, instead of $1,000, her income under the act of 1920.
"6. That the defendant may be restrained and enjoined from using, administering or paying out of the said funds and securities turned over by the firemen's pension fund, for any other purpose than for the use and benefit of the complainants as firemen of Atlantic City, or
"7. That the defendant may be restrained and enjoined from using or administering or paying out any of the said funds or securities except under the terms of the act of 1905."
The complainants contend that the members of the fire department voluntarily paid into the fund of the Atlantic City Fire Department Pension Fund a certain per centum of their salary and have a vested interest in the funds paid by the Atlantic City fire department fund to the Pension Commission of the Police and Fire Department of the City of Atlantic City by virtue of said peremptory writ of mandamus awarded by the supreme court.Pension Commission, c., v. Atlantic City Fire Department,c., 97 N.J. Law 117; affirmed, by the court of errors and appeals, 98 N.J. Law 794.
The supreme court in its opinion held: "* * * the funds under the control of the respondent [being the funds ordered paid to the present defendants] clearly fall within the provisions of section 8 of the act of 1920, above quoted, and are funds in which the respondent or the firemen of Atlantic City have no vested interest."
The court of errors and appeals said: "For present purposes, it may be assumed, without deciding, that the implication deducible from the case of Pennie v. Reis, 132 U.S. 464 [viz., that a fund produced by voluntary contributions is immune *Page 477 
from legislation of this kind], protects the moneys called for by the alternative writ, or such part of them as is the proceeds of voluntary contributions, from application in any other manner than that contemplated by the act of 1905, page 114, and its supplements."
The reference in Pennie v. Reis, supra, is the following:
"If the two dollars per month retained out of the alleged compensation of the police officer, had been in fact paid to him, and thus become subject to his absolute control, and after such payment he had been induced to contribute it each month to a fund on condition that, upon his death, a thousand dollars should be paid out of it to his representative, a different question would have been raised with respect to the disposition of the fund, or at least of the amount of the decedent's contribution to it. Upon such a question we are not required to express any opinion."
An examination of the statutes (P.L. 1905 p. 117, as amendedP.L. 1910 p. 502) shows that the fund shall be provided for and sustained by premiums from insurance companies, fines, penalties and forfeitures, rewards, fees, gifts, c., appropriation, donation, c., fees from permits and proceeds of sales of materials, certain fees, fines and taxes; and if the amount of any such pension fund shall at any time be less than $20,000, the board of trustees may assess and collect from each and every member of such department a sum not exceeding one per centum of his salary.
By chapter 257, laws of 1913 (P.L. p. 486), this act was amended, in so far as this assessment, to read: "The board of trustees of any such corporation shall assess and collect from each and every member of such department who is eligible to membership in said pension fund, a sum not exceeding two per centum of his salary, and not less than one per centum thereof, for said pension fund; said sum shall be paid by each and every such member monthly to the treasurer of such corporation, and such assessment and collection shall be made in the manner and form as may be provided in the by-laws of the corporation, and it shall be lawful for any municipality in this state to pay to the board of trustees *Page 478 
of any such corporation an amount not exceeding two per centum of the salary, and not less than one per centum of the salary of each and every member of such department whenever such municipality through its common council or other governing body may appropriate a sufficient amount for such purpose."
The use in the act of 1910 of the words "shall assess and collect from each and every member," c., manifestly brings this payment within the rule as expressed in Pennie v. Reis,supra, and is not "a different question" not therein decided.
The word "assess" is synonymous with "levy." State v. JerseyCity, 42 N.J. Law 97.
Although, for convenience in the bookkeeping department, or for some other cause, the warrants for salary of the individual members were drawn in full; and by prearranged authority given the respective captains, collected the pay warrants, deducted the one per centum, and gave the balance to the man. The amount deducted never became subject to his (the man's) actual control, nor was it a contribution made each month to a fund on a specified condition.
There was no voluntary act on the part of the member concerning this payment. It was assessed or levied, by competent authority, and the collection thereof by that authority was an imperative duty. There was no discretion on the part of the board of trustees to assess and collect one per centum, that being the minimum amount permitted by the statute. The discretion to increase the amount to a sum not exceeding two per centum was not exercised.
If it be argued that the act of 1910, page 502, where the words "may assess and collect" might make the amounts collected thereunder a voluntary payment by the member, there is nothing before the court to indicate that at any time the board of trustees exercised the power to "assess and collect" (when the fund was less than $20,000), a condition required by the act.
The death of Lewis Hubbard, a member occurred on December 12th, 1923, after the delivery of the funds to the Commission in accordance with the order of said writ, and *Page 479 
he in his lifetime, nor his widow after his death, obtained no greater interest in the funds. The law having been changed before the death of the intestate, the fund was no longer subject to the provisions of the act of 1905. She is therefore not entitled to the relief prayed for.
The result is that the bill must be dismissed.