FEDERICO FERNÁNDEZ TOSTE, Petitioner and Appellee, *v.* LESLIE A. MACLEOD, AUDITOR OF PUERTO RICO ET AL., R. SANCHO BONET, TREASURER OF PUERTO RICO and PRESIDENT OF THE PENSION BOARD OF THE INSULAR GOVERNMENT; HERMAN AGOSTINI, SECRETARY, and E. GARRIDO MORALES, JOSÉ G. LÓPEZ and JUAN B. HUYKE, MEMBERS OF THE BOARD, Respondents and Appellants.

No. 7489.    Argued January 18, 1938.—Decided March 29, 1938.

*B. Fernández García, Attorney General, Jesús A. González,* Legal Adviser, *E. Córdova Díaz, Assistant Attorney General,* for the Auditor and Treasurer of Puerto Rico. *Miguel A. Muñoz* for the Retirement Board. *R. Soltero Peralta* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The petitioner, Federico Fernández Toste, after having served with the Insular Government for a period of more than thirty successive years retired from active service on the 14th of September, 1931. During the last seven years of his employment he received an average salary of $3,129 annually.

On the date of his retirement, the petitioner had a right to enjoy an annuity in accordance with Act No. 22 of Sep-

tember 22, 1923 (Laws p. 156) inasmuch as he had not waived such benefit prior to the first of January 1924 pursuant to what is provided in Section 1 of said Act.

On September 2, 1925, the Legislative Assembly approved Act No. 104 (p. 948) which provides for the retirement of the permanent employees of the Insular Government and makes its benefits extensive to all the employees of the classified and unclassified Civil Service. According to Sections 3 and 5 of the Act mentioned the petitioner had a right on retirement to receive a life pension of $1,500 per year.

Act No. 73 of May 6, 1930 (Laws p. 452) raised the maximum of the life pension to the sum of $2,000 per year with regard to every employee or official who should have rendered services for thirty years or more. When the petitioner retired from his employment, the defendant Board granted him a life pension of $2,000 per year payable in monthly installments of $166.66 each, which payments were received by him from September 14, 1931, until July 15, 1935. From this last date until the present time the petitioner has been receiving over his protest only $140 per month.

The petitioner required of the defendant Board that it pay out to him the difference of $26.66 per month which it had failed to pay him. On the refusal of the defendant to do this, the petitioner filed a proceeding for a writ of mandamus in which it be ordered that the defendant Board proceed to authorize the payment of the pensions of the petitioner in accordance with the amount which was granted to him on the date of his retirement.

The answer of the defendant Board admits the facts which we have just recited and by way of defenses avers,

1. That the reduction of the pension of the petitioner was made in accordance with the provisions of Section 11 of Act No. 23 approved on July 16, 1935 (p. 126).

2. That the Insular Government has no available funds to apply to the payment of the amounts which the petitioner claims.

3. That the defendant Board has no ministerial duty whatsoever to discharge under Act No. 104 of September 2, 1925 (p. 948), inasmuch as that statute was expressly repealed by Act No. 23 of July 16, 1935; and that therefore the mandamus does not lie.

4. That the complaint does not allege facts sufficient to state a cause of action in favor of the petitioner.

The District Court of San Juan rendered judgment for the petitioner and the defendant Board took the present appeal. The only assignment of error reads as follows:

"The District Court of the Judicial District of San Juan erred in holding that the Legislature of Puerto Rico had no legal authority to reduce a pension granted under a prior statute, and in deciding that Section 11 of Act No. 23 of July 16, 1935 was unconstitutional."

■■ The legal provision attacked as unconstitutional is Section 11 of Act No. 23 of July 16, 1935 (Laws of that year, Special Session, p. 126) which reads as follows:

"Section 11.—Each official and employee of the Insular Government of Puerto Rico, who, before this law takes effect, has been retired, or whose application for retirement has been favorably acted upon, in accordance with the provisions of Act No. 22 of September 22, 1923, and of Act No. 104, of September 2, 1925, as amended by Act No. 33 of April 21, 1928, by Act No. 73 of May 6, 1930, and by Act No. 37 of May 4, 1933, shall be entitled to receive the life annuity originally granted to him, less a deduction which shall be computed as follows: from pensioners who are now fifty years old or less, a deduction of 20 per cent shall be made; from those of over fifty years, such deduction shall de reduced at the rate of one per cent for each year of age over fifty, so that from those seventy years of age, such deduction will be reduced to zero; *Provided,* that these deductions shall not be applicable to life annuities of less than thirty (30) dollars, or to such pensioners as are physically disabled for work and have no other income whatsoever."

The petitioner and appellee alleges that the statute is against the constitution because it deprives him of the vested right acquired by him under shelter of prior legislation, without due process of law. To uphold the constitutional validity of the statute, the appellant Board invokes the decisions of

this Supreme Court in the cases of *Luján* v. *Insular Police Commission*, 38 P.R.R. 52, and *Domenech* v. *Teachers' Pension Board*, 42 P.R.R. 584.

The rule which we consider applicable to the facts of this case appears thus expressed in the note published in 98 A.L.R. page 507:

"*Official allowance of pension; fulfilment of conditions.*

"It is said in the earlier annotation that, where any particular payment under a pension has become due, it is generally conceded that the pensioner has a vested right therein. It seems from a review of the later cases that this is true not only of particular payments which have become due and are immediately payable, but also as to payments which are not immediately payable but may become due at some time in the future, *provided the conditions have all been fulfilled entitling the party to a pension, especially where official action has been taken allowing the pension. The rule may be stated to be that when it has been determined that an officer is entitled to a pension and the pension has been officially allowed, or when the event happens upon which the granting of the pension is dependent, the pension thereupon becomes vested and cannot afterwards be revoked or impaired.* This rule is supported by the following authorities, in addition to the authorities cited in the earlier annotation: (numerous citations)". (Italics ours.)

In the case of *Cavannagh* v. *Board of Police Pension Fund Commissioners*, 134 Cal. 50, it was held that when the widow of a retired and pensioned employee acquired the right to receive a certain amount from the pension fund upon the death of her husband, while the statute was in force, her right to receive said amount became a vested right, and that it was not within the power of the Legislature to deprive her of that vested right by repealing the statute.

We agree with the lower court that the decision of this Supreme Court in *Luján* v. *Insular Police Commission* did not strictly conform to the doctrine laid down by the Supreme Court of the United States in the case of *Pennie* v. *Reis*, 132 U. S. 432. A more critical and considered analysis of both decisions reveals the fact that there is no analogy between the questions involved in each of the cases.

Let us examine the facts in the case of *Pennie* v. *Reis, supra.* An act of California of 1878 authorized the Treasurer of San Francisco to withhold two dollars from the monthly salary of each policeman for the purpose of creating a life insurance fund, from which one thousand dollars was to be paid to the heirs of each policeman who should die. Policeman Ward contributed to this fund from April 1, 1878, until March, 1889. Prior to his death the Legislative Assembly of California repealed the Act of 1878 and approved that of March 4, 1889, by virtue of which the funds were disposed of in a different manner than that provided for in the repealed statute. When Ward died the administrator of his estate claimed the sum of one thousand dollars in accordance with the repealed statute. The Supreme Court of California decided the case against the administrator. The judgment of the Federal Supreme Court affirming the above decision is based on the same doctrine above transcribed from 98 A.L.R. 507, as will be seen from a reading of the following:

"Being a fund raised in that way, it was entirely at the disposal of the government, until, by the happening of one of the events stated—the resignation, dismissal, or death of the officer—the right to the specific sum promised became vested in the officer or his representative. It requires no argument or citation of authorities to show, that in making a disposition of a fund of that character, previous to the happening of one of the events mentioned, the State impaired no absolute right of property in the police officer. The direction of the State, that the fund should be one for the benefit of the police officer or his representative, under certain conditions, was subject to change or revocation at any time, at the will of the legislature. There was no contract on the part of the State that its disposition should always continue as originally provided. *Until the particular event should happen upon which the money or a part of it was to be paid, there was no vested right in the officer to such payment.* His interest in the fund was, until then, a mere expectancy created by the law, and liable to be revoked or destroyed by the same authority. The law of April 1, 1878, having been repealed

before the death of the intestate, his expectancy became impossible of realization; the money which was to pay the amount claimed had been previously transferred and mingled with another fund, and was no longer subject to the provisions of that act. Such being the nature of the Intestate's interest in the fund provided by the law of 1878, there was no right of property in him of which he or his representative has been deprived.'' 132 U. S. 471. (Italics ours.)

The facts in *Luján* v. *Insular Police Commission, supra,* were different. Luján retired from the police service with a pension of $35 per month which was granted to him under Act No. 68 of July 16, 1921. This Act provided in Section 15:

"Persons retired from the service of the Insular Police shall continue in the enjoyment of their civil rights and may hold any other elective or administrative office without prejudice to such retirement pension as they may be enjoying.''

Relying on the above provision, Luján accepted an employment with the Municipality of San Juan which was occupied by him from January, 1925, until November 30, 1926. The Police Commission suspended payment of his pension from the 20th of August 1925, until November 20, 1926, on the basis of Act No. 86 of August 20, 1925 (p. 662), which, amended Act No. 68 of 1921 (p. 652), adding Section 5 (*a*), which reads:

"Any person enjoying a pension shall cease in the enjoyment thereof as long as he may be discharging a position with the Federal, Insular or Municipal Government for any salary or compensation whatever.''

The outstanding difference between the two cases is that Ward fell short of acquiring any right, inasmuch as the statute was repealed before the happening of the condition precedent to his right to receive a pension, which was his death. Luján retired and began to enjoy his pension and the right to occupy a municipal office according to the act in force on the date of his retirement. The subsequent legislation surely deprived him of a vested right and one which he

had enjoyed from January 1925, to August 20 of the same year, on which date the new act went into force.

The case of *Domenech* v. *Pension Board, supra,* can not be invoked as an authority for the decision of the case before us. Domenech had acquired no right on the date of the repeal of the statute.

The most recent decision of the Federal Supreme Court on the subject of pensions was rendered in the case of *Dodge* v. *Board of Education* 82 Law ed. 77 (advance opinion No. 3), on November 8, 1937, in which the facts were as follows:

Ever since the year 1895 the State of Illinois adopted an act creating a fund for the payment of pensions to teachers who should retire from service. The fund was made up of the proceeds from contributions paid by the teachers and with the proceeds from gifts and bequests; and later was increased by the income from interest and taxes. In 1926 the "Miller Act" went into force which provided for the compulsory retirement of all teachers over seventy years of age and provided that every person who should so be retired from active service and who should have served in the public schools for twenty years or more prior to the date of his retirement, should receive the sum of $1,500 per year for his lifetime, such payments to be made out of money received from a general tax imposed for educational purposes. The act provided that this payment was not made in substitution of but in addition to the retirement pension payable under existing legislation. In 1927 the act was amended to permit the retirement of teachers who should have served for twenty-five years or more and who should be more than sixty-five years of age, with an annual pension of a thousand to fifteen hundred dollars according to their age at the time of their retirement.

In 1935, after the plaintiffs retired from educational service, a new amendment was adopted by which the pension to be received by teachers who had accepted the benefits of retirement under the Miller Act, was fixed at five hundred

dollars per year. The Supreme Court of Illinois held that this amendment was applicable to the teachers who had already retired prior to its approval. In the appeal before the Federal Supreme Court the teachers and appellants alleged that the amendment in question deprived them of vested rights, of which they could not be despoiled; that the Miller Act constituted an offer which each of them had accepted by remaining in the service until their retirement; and that the contractual obligation had become perfected and could not be impaired by subsequent legislation. The defendant alleged that there was no contractual obligation whatsoever; that the payments made to the retired teachers were pensions, subject to revocation or modification at the will of the legislative assembly. In affirming the decision of the Supreme Court of the State, the Federal Supreme Court expressed itself thus:

"In determining whether a law tenders a contract to a citizen it is of first importance to examine the language of the statute. If it provides for the execution of a written contract on behalf of the state the case for an obligation binding upon the state is clear . . . On the other hand, an act merely fixing salaries of officers creates no contract in their favor and the compensation named may be altered at the will of the legislature. This is true also of an act fixing the term or tenure of a public officer or an employee of a state agency. The presumption is that such a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise . . . *If, upon a construction of the statute, it is found that the payments are gratuities, involving no agreement of the parties, the grant of them creates no vested right.*" (Italics ours.)

As authority to support the words which we have underscored the case of *Pennie* v. *Reis, supra,* is cited in which the Federal Supreme Court, after stating the doctrine which we have transcribed above, when considering the specific facts of the case, said:

"If the two dollars a month, retained out of the alleged compensation of the police officer, had been in fact paid to him, and thus be-

come subject to his absolute control, and after such payment he had been induced to contribute it each month to a fund on condition that, upon his death, a thousand dollars should be paid out of it, to his representative, a different question would have been raised, with respect to the disposition of the fund, or at least of the amount of the decedent's contribution to it. Upon such a question we are not required to express any opinion. It is sufficient that the two dollars retained from the police officer each month, though called in the law a part of his compensation, were, in fact, an appropriation of that amount by the State each month to the creation of a fund for the benefit of the police officers named in that law, and, until used for the purposes designed, could be transferred to other parties and applied to different purposes by the legislature.''

From the above it may be inferred that the decision in *Pennie* v. *Reis, supra,* as well as that of *Dodge* v. *Board* of *Education, supra,* are based upon the essential fact that the claimants of the pensions had not voluntarily contributed to the formation of the fund from which the pensions claimed were to be paid.

The insular legislation on the subject of pensions had its origin in Act No. 22 of September 22, 1923 (Laws, p. 156) That act was of an optional nature, inasmuch as its obligations and benefits were made extensive only to those officials and employees ''who before the first of January 1924, should not have waived the benefits of the same'', and provided furthermore that those who should begin to render service on or after December 1, 1923, could waive the benefits of the act within a period of thirty days to be computed from the date of their appointment. The ''Pension Fund of the Employees of the Government of Puerto Rico'' was formed from the proceeds of a 2 per cent tax on the salaries of all employees and on the pensions granted, plus interest accrued on the same fund. The Insular Auditor was authorized to make the corresponding discounts and credit the proceeds to an item entitled ''Pension Fund of the Employees of the Government of Puerto Rico.''

The employee who is now appellee was already an employe of the People of Puerto Rico on the date when said act went into force and chose to come under the act by the mere fact that he did not waive its benefits before January 1, 1924.

Act No. 104 of September 2, 1925 (Laws, p. 948), which expressly repealed Act No. 22 of 1923, *supra,* is of a compulsory nature. With certain exceptions every insular employee is bound by its provisions, and the employee is not left at liberty to waive the benefits of the act and receive his entire salary. The act provides that any employee in active service who should have rendered services for at least twenty years, shall have a right to retire with an annual life pension equivalent to 2 per cent of the average salary earned by him during the last seven years of his computable services, multiplied by the number of years of service. Section 13 of the act authorizes the deduction and withholding of 3 per cent of the employee's salary and the deposit of the proceeds of the deductions in the Retirement Fund. Section 15 provides that the amounts deducted in accordance with Act No. 22 of 1923, plus the amounts deducted and withheld in accordance with the new act until December 31, 1925, shall be credited to a special reserve fund which will be exclusively used for the payment of refunds, salaries of employees and costs of administration of the Retirement Board; and that for the payment of pensions under the new act there shall be used every class of funds which may come into the new fund entitled "Retirement Fund of the Employees of the Civil Service of Puerto Rico—Trust Fund."

In the case cited by the appellee of *Raines* v. *Board of Trustees, etc.,* 7 N. E. 2d 489, the Supreme Court of Illinois makes the following comparative study of the two systems of compensation for retired employees:

"The whole difficulty in this case arises from a failure to distinguish between a pension fund and an annuity fund derived in part from voluntary contributions made under a statutory option to

contribute or refrain from contributing. A 'pension' is in the nature of a bounty springing from the appreciation and graciousness of the sovereign, and may be given, withheld, distributed, or recalled at its pleasure. (Citations.) For this reason it is held that a pensioner has no vested right in a pension fund. It has also been held that the character of a pension fund is not changed by compulsory contributions by way of exactions from the salaries or wages of public officers and employees. It is said that such payments into the fund are not in fact payments by the officer or employee, and the employment is accepted with knowledge that certain amounts will be deducted each month and placed in the pension fund; that the money is not first segregated from the public fund so as to become private property and then turned over to the pension fund, but is set aside or transferred from one public fund to another, and remains public money over which the person from whose salary it is deducted has not control, and in which he has no right. (Citations, among them *Pennie* v. *Reis, supra*) . . . Such a fund remains at all times public money to be dispensed as a gratuity or withdrawn at will devoid of any right in the pensioner.

"There is a wide difference between voluntary contributions to a fund under a statutory elective right and being compelled to suffer deductions without any such right. In the latter case the officer or employee has no voice in determining whether or not he will suffer such exactions. They are imposed by the statute and deducted even if against his will. In the other case it is wholly a matter of choice with him. He may elect to come within the terms of the act and receive its benefits, or he may forego that privilege at his option, with no other effect than to deprive him of participating in the fund. If he does not elect to contribute, he receives and retains the full amount of his salary or wages. If he elects to contribute, the amounts are deducted by his direction. The effect is the same as if his full salary were paid to him and after it became his private means he in turn contributed to the retirement fund. In such case there is neither reason nor authority to hold that the fund remains public money in which he has no right or interest.

"Under statutes creating teachers' retirement funds by which it is optional with the teachers to come under their provisions by having a certain sum deducted from their salaries, it is held that the election to participate in the fund raises a contractual relation, the terms of which are ascertained by reference to the statute. (Citations.) . . .

"The relations between voluntary contributors and the sovereign being contractual, it follows that the rights created are not measured by the rights of pensioners. They are similar, and amount, in effect, to insurance contracts providing annuities upon maturity of the contract or policy of insurance. The basis of such annuities is the same as the basis of any other contract. The consideration is the offer of the sovereign, the acceptance of the offer, and performance of its terms . . . Under contracts based on optional voluntary contributions, the contributors have a substantial interest in the fund by virtue of the amounts paid in under the terms of the contract. The benefits to be derived are not gratuities from public funds for past services, . . ."

The present case differs on its facts from the three cases which we have studied. In *Pennie* v. *Reis, supra,* the contribution to the fund was not optional and, furthermore, Ward's death occurred after the amendment to the Pension Act, in other words, the amendment took effect before Ward acquired any right under the prior law. In *Dodge* v. *Board of Education, supra,* the claimants had contributed in no way to the fund created by the Miller Act, a fund which was supplied from proceeds of a special tax for educational purposes. The decision in *Raines* v. *Board of Trustees, supra,* is based on the optional and voluntary nature of the contributions to the pension fund.

In the present case the petitioning employee and appellee had already been a public employee for many years before Act No. 22 of September 22, 1923, went into force. When he elected to accept its benefits there arose certain contractual relations between the Government and said employee, by virtue of which the employee acquired a potential right, not vested, to have the pensions provided by the act paid to him when the conditions fixed therein and precedent to the enjoyment of said pensions should be fulfilled. This potential right disappeared when Act No. 22, *supra,* was substituted and repealed by Act No. 104 of September 2, 1925, which was of a compulsory nature and granted no option whatsoever, either to those who were already employed on

that date or to those who should accept an employment in the future, to waive the benefits of the act and be able to receive their salaries without any deduction.

According to the authorities which we have considered, we have no doubt that the Legislative Assembly had the power to dispose at will of the pension fund at any moment prior to the fulfil1ment of the conditions which gave the petitioner a right to enjoy a pension; and that this power ceased from the moment that these conditions were fulfilled and specially from the moment that the Retirement Board took official action and granted the petitioner the pension which he enjoyed during the four years which preceded the approval of the new act. See: *Kavannagh* v. *Board of Police Commissioners, supra; Cohrn* v. *Henderson,* 19 Ca1. App. 89, 90; *Sheehan* v. *Board of Police Commissioners,* 47 Cal. App. 29; *O'Dea* v. *Cook et al.,* 176 Cal. 659; and *Klench* v. *Board of Pension Fund Commissioners,* 249 P. 46.

When the petitioner voluntarily retired from service on September 14, 1931, all the conditions required by the legis1ation in force on that date, to give a right to an annual pension of $2,000, had been complied with. The petitioner had dedicated more than thirty years of his life to the service of the community and this community had paid him an average salary of $3,129 during the last seven years of his service. Relying on the fulfi1lment of these requirements, and acting in accordance with the provisions of Section 3 of Act No. 104 of September 2, 1925, as amended by Act No. 73 of May 6, 1930 (p. 450) the Pension Board granted a pension to the petitioner and officially acknowledged his right to retire from service and to enjoy for the rest of his life an annuity of $2,000. From the moment that the Pension Board adjudicated the pension to the petitioner and the latter accepted it retiring from service, the right to continue receiving said pension became a vested one, which can not be taken away from him by subsequent legislation.

For the reasons expressed we are of the opinion that Section 11 of Act No. 23 of July 16, 1935 ((2) p. 126) is unconstitutional inasmuch as it attempts to deprive the petitioner of a vested right which he has been enjoying under prior legislation.

The judgment appealed from should be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.