CECIL W. TAYLOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MALCOLM D. AND MARTHA ANN MILLER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 108526, 109345. Promulgated June 25, 1943.

*Thomas M. Wilkins, Esq.*, for petitioner Cecil W. Taylor.
*Malcolm D. Miller, Esq.*, for petitioners Malcolm D. and Martha Ann Miller.
*E. M. Woolf, Esq.*, for the respondent.

#### OPINION.

OPPER. *Judge:* The Commissioner determined a deficiency of $6.52 in Cecil W. Taylor's 1939 income tax and a deficiency of $7.37 in Malcolm D. and Martha Ann Miller's 1940 joint income tax. Both deficiencies result from the inclusion in the taxpayer's income of amounts withheld,[1] under the Civil Service Retirement Act, from the taxpayer's basic pay as an employee in the Civil Service of the United States.

---

[1] In order to avoid possible misunderstanding, the term deductions is not used, since it has a different meaning in the Retirement Act and in the Revenue Act.

The taxpayer, Cecil W. Taylor, resides in Washington, D. C., and filed his income tax return for 1939 on a cash basis with the collector at Baltimore, Maryland. He has been a classified Civil Service employee of the Bureau of Internal Revenue from the date of his appointment, April 4. 1919, after passing the necessary Civil Service examination. He has been subject to the Civil Service Retirement Act since its enactment May 22. 1920 (41 Stat. 614). His basic salary for 1939 was $5,400, but as December 31, 1939, fell on Sunday, he did not receive his pay for the last half of that month until January 2, 1940. Under section 10 of the Civil Service Retirement Act, as amended (44 Stat. 904), 3½ per centum of his basic pay, or $181.12, was withheld from his 1939 pay, leaving $4,993.88 received in cash.

The taxpayers. Malcolm. D. Miller and his wife Martha Ann, reside in Arlington, Virginia, and filed a joint income tax return for 1940 on a cash basis with the collector at Baltimore, Maryland. Miller has been a classified Civil Service employee since August 1934 after passing a Civil Service examination. He was subject to the Civil Service Retirement Act. During 1940 he was an examiner in the Bureau of Motor Carriers of the Interstate Commerce Commission, and his basic salary for 1940 was $2,700. Under section 10 of the Civil Service Retirement Act. 3½ per centum of his basic pay, or $94.56, was withheld from his 1940 pay, leaving $2,605.44 received. The Civil Service Retirement Act in the taxable years provided:

#### Employees To Whom the Act Shall Apply

Sec. 3. This act shall apply to the following employees and groups of employees:

(a) All employees in the classified civil service * * *.

#### Deductions and Donations  •

Sec. 10. Beginning as of July 1, 1926, there shall be deducted and withheld from the basic salary, pay, or compensation of each employee to whom this act applies a sum equal to 3½ per centum of such employee's basic salary, pay, or compensation. The amounts so deducted and withheld from the basic salary, pay, or compensation of each employee shall, in accordance with such procedure as may be prescribed by the Comptroller General of the United States, be deposited in the Treasury of the United States to the credit of the "civil-service retirement and disability fund" created by the act of May 22, 1920, and said fund is hereby appropriated for the payment of annuities, refunds, and allowances as provided in this act.

The Secretary of the Treasury is hereby authorized and empowered in carrying out the provisions of this act to supplement the individual contributions of employees with moneys received in the form of donations, gifts. legacies, or bequests. or otherwise. and to receive, deposit, and invest for the purposes of this act all moneys which may be contributed by private individuals or corporations or organizations for the benefit of civil-service employees generally.

Every employee coming within the provisions of this act shall be deemed to consent and agree to the deductions from salary, pay, or compensation as pro-

vided herein, and payment less such deductions shall be a full and complete discharge and acquittance of all claims and demands whatsoever for all regular services rendered by such employee during the period covered by such payment, except the right to the benefits to which he shall be entitled under the provisions of this act, notwithstanding the provisions of sections 167, 168, and 169 of the Revised Statutes of the United States, and of any other law, rule, or regulation affecting the salary, pay, or compensation of any person or persons employed in the civil service to whom this act applies.

### Returns of Amounts Deducted From Salaries

Sec. 12. (a) Under such regulations as may be prescribed by the Civil Service Commission the amounts deducted and withheld from the basic salary, pay, or compensation of each employee for credit to the "civil-service retirement and disability fund" created by the act of May 22, 1920, covering service during the period from August 1, 1920, to the effective date of this act, shall be credited to an individual account of such employee, to be maintained by the department or office by which he is employed and the amounts deducted and withheld from the basic salary, pay, or compensation of each employee for credit to the "civil-service retirement and disability fund" covering service from and after the effective date of this act, less the sum of $1 per month or major fraction thereof, shall similarly be credited to such individual account.

(b) In the case of any employee to whom this act applies who shall be transferred to a position not within the purview of the act, or who shall become absolutely separated from the service before becoming eligible for retirement on annuity, the amount credited to his individual account shall be returned to such employee together with interest at 4 per centum per annum compounded on June 30 of each year: *Provided*, That when any employee becomes involuntarily separated from the service, not by removal for cause on charges of misconduct or delinquency, the total amount of his deductions with interest thereon shall be paid to such employee: *And provided further*, That all money so returned to an employee must, upon reinstatement, retransfer, or reappointment to a position coming within the purview of this act, be redeposited with interest before such employee may derive any benefits under this act, except as provided in this section, but interest shall not be required covering any period of separation from the service.

(c) In case an annuitant shall die without having received in annuities purchased by the employee's contributions as provided in (2) of section 4 hereof an amount equal to the total amount to his credit at time of retirement, the amount remaining to his credit shall be paid in one sum to his legal representatives upon the establishment of a valid claim therefor, unless the annuitant shall have elected to receive an increased annuity as provided in section 4 hereof.

(d) In case an employee shall die without having attained eligibility for retirement or without having established a valid claim for annuity, the total amount of his deductions with interest thereon shall be paid to the legal representatives of such employee.

(e) In case a former employee entitled to the return of the amount credited to his individual account shall become legally incompetent, the total amount due may be paid to a duly appointed guardian or committee of such employee.

### Exemption From Execution, and So Forth

Sec. 18. None of the moneys mentioned in this act shall be assignable, either in law or equity, or be subject to execution, levy, or attachment, garnishment, or other legal process.

Other sections of the act provide (sec. 1) for retirement eligibility after 15 years' service. at ages 62, 65, and 70. depending on occupational classifications, with option to retire at specified earlier ages after 30 years' service; (sec. 2) for automatic retirement at specified ages; (sec. 4) for method of computing the retirement annuity; (sec. 5) for the manner of computing accredited service; (sec. 6) for conditions of disability retirement. Section 7 provides that if at age 55, or over. and after 15 years' service. the employee is "involuntarily separated from the service, not by removal for cause on charges of misconduct or delinquency," he may elect to receive return of his total deductions with interest, or an immediate restricted annuity, or a deferred annuity.

Section 8 provides for an extension of benefits to those already retired; section 9 gives credit for past service; section 11 governs investment of the fund by the Secretary of the Treasury; section 13 specifies the form of application for an annuity and manner of payment; section 14 provides the manner of obtaining annuity credit for the period in government service outside the purview of the act; section 15 prescribes the duties of the Civil Service Commission; section 16 provides for a Board of Actuaries, and section 17 relates to matters of administration.

Respondent is not here seeking to charge petitioner with any amounts credited to his account by way of interest, or otherwise consisting of contributions on the part of his employer, the Government of the United States. In that respect the proceeding enters a field entirely different from that considered in *Dillis C. Knapp*, 41 B. T. A. 23. Petitioner's position that the part of his basic salary withheld from him and used to constitute his contribution to the retirement fund under the Civil Service Retirement Act is not part of his taxable income can, nevertheless, be supported if either one of two propositions is true. One is that these contributions procure for petitioner something purely illusory in that an employee is granted no rights under the Retirement Act of which he can not be deprived should Congress so determine. The other is that in any event the failure to receive the disputed payments in cash eliminates them from the taxable income of a cash basis taxpayer.

The general plan of the Retirement Act seems to us in essence to constitute the creation for each employee concerned of a retirement annuity. the amount of which is based in part upon the contributions of the employee, in part upon the accretions arising from interest on these amounts, and in part by contributions of the United States as his employer. Under the details specified in the Retirement Act as in force during the tax years in question, one factor determining the amount of "the annuity of an employee is" "(2) the amount of annuity purchasable with the sum to the credit of the employee's individual

account," the creation of which is required by section 12 (a) of the Act, under which amounts withheld from the basic salary of the employee less one dollar [2] per month are "to be credited to an individual account of such employee to be maintained by the department or office by which he is employed." These sums are withheld pursuant to section 10 of the act, which requires that:

Every employee coming within the provisions of this Act shall be‧ deemed to consent and agree to the deductions from salary. pay, or compensation as provided herein, and payment less such deductions shall be a full and complete discharge and acquittance of all claims and demands whatsoever for all regular services rendered by such employee during the period covered by such payment, *except the right to the benefits to which he shall be entitled under the provisions of this Act* * * * [*Italics* added.]

If an employee dies or becomes legally incompetent before retirement, "the total amount of his deductions with interest thereon shall be paid to the legal representative of such employee." An employee who transfers to‧a position not within the Retirement Act or becomes absolutely separated from the service [3] is entitled to have "the amount credited to his individual account * * * returned to such employee, together with interest at 4 per centum per annum compounded on June 30 of each year." And in the case of an employee who has been retired but dies without receiving "in annuities purchased by * * * [his] contributions * * * an amount equal to the total amount to his credit at the time of retirement, the amount remaining to his credit shall be paid in one sum to his legal representative * * *."

These aspects of the retirement plan seem to us to demonstrate that there have been purchased by the employee substantial rights. of a value which can in no event fall materially below the amount of his own contribution, which presently belong to him, and which are unequivocally provided for his ultimate benefit under whatever contingency and in whatever circumstance the occasion for that benefit should arise. They are in that respect comparable to, and for our purposes indistinguishable from, an annuity contract, of which the employer constitutes itself the issuer. setting aside reserves for that purpose and making investments thereof comparable to those which would be employed by companies engaged in that business.

---

[2] This is called a "tontine" by the Civil Service Commission (Pub. Doc. Form 3020—Dec. 1935, p. VII) and according to the brief of petitioner Miller "employees are informed that this is for administrative expenses."

[3] Petitioners appear to contend that a separation for misconduct would prejudice the employee's prospect of a return of amounts credited to him, but the statute makes no such provision and in *Boerner* v. *United States* (C. C. A.. 2d Cir.). 117 Fed. (2d) 387 : certiorari denied, 313 U. S. 587, plaintiff, who had embezzled postal matter, "was separated from the service for cause" yet when he "brought this action * * * to secure a refund * * * of the deductions made from his salary * * ·*" the Court notes that "His claim for such refund * * * has never been disputed."

So considered we find nothing in the authorities dealing with this subject to convince us that petitioners could be deprived of the benefits to which by this legislation their own contributions entitle them. There must be emphasized a sharp distinction in dealing with these cases between the pension or gratuity type of retirement provisions and those which are constituted from funds contributed by the employee; and for our purposes it will be sufficient if our consideration is limited to that part of the retirement fund which is derived from the employee's contributions as embodied in the account established to his credit under the retirement act. for it is to these payments, of course. that the contentions of the respective parties are directed.

Thus, in *Retirement Board of Allegheny County* v. *McGovern*, 316 Pa. 161; 174 Atl. 400. 405, the Supreme Court of Pennsylvania states the distinction as follows:

\* \* \* Where an allowance is made out of hand, gratuitously and purely for past services, by the government, it is a pension, with all the attributes of a pension; but where the employee contributes a part of his salary or wages with a sum from the state or county in a quasi-contractual relationship with the municipality or state. creating a contributed reserve retirement system, the results are different, retirement pay made therefrom is not a pension \* \* \*

The employee's contributions are as much wages or salary when deducted at the source as though they had been paid directly \* \* \* To hold otherwise for the reason that employee contributions are not wages when compulsorily deducted would not only be unfair and unjust, but would circumvent all known equities \* \* \*

See also *Bausewine* v. *City of Philadelphia Police Pension Fund Ass'n.* (Pa.), 10 Atl. (2d) 446; *Abrahams* v. *Wilson* (Pa.), 3 Atl. (2d) 1016.

In *State ex rel. Gorczyca* v. *City of Minneapolis*, 174 Minn. 594, 219 N. W. 924. 925. the court thought that:

\* \* \* It is not a gratuity when the services are rendered while the pension or retirement relief statute is in force so that the statute becomes part of the contract of employment and contemplates such pension or allowance as part of the compensation for the services rendered. \* \* \*

In *Crawford* v. *Teachers' Retirement Fund Association, etc.,* 99 Pac. (2d) 729. 733. the Supreme Court of Oregon did not consider:

\* \* \* the annuities provided under the teachers' retirement fund plan as in the nature of pensions or bounties which a beneficent sovereignty, at its will. may change or abolish. The teacher, by continuing in the service and making contributions to the fund, has, in effect, accepted the offer of the State, through its governmental agencies, to pay an annuity upon retirement at a certain age. We are not, therefore, dealing with the rights of a public officer in a pension fund. which is always subject to legislative control. but rather with the rights of an employee to the payment of an annuity provided for under the terms of the statute which became a part of the contract.

And in *Talbott* v. *Independent School District of Des Moines*, 230 Iowa, 949; 299 N. W. 556, where a number of these cases are reviewed

The conclusion * * * deduced from all of these decisions holding that allowances paid to public employees from retirement funds, in part maintained by them, is that such allowances are not pure pensions, gratuities, or bounties, but are given in consideration of services which were not fully recompensed when rendered. * * *

Questions of this general nature have come at one time or another before these and a number of other state courts, but the decisions are by no means uniform and, particularly in the light of their construction of legislation containing different provisions and of their application to situations presenting different facts, it would be idle to assert that they afford any real help in disposing of the present proceedings. Nor are such cases as *Pennie* v. *Reis*, 132 U. S. 464; *Dodge* v. *Board of Education*, 302 U. S. 74, or *MacLeod* v. *Fernandez* (C. C. A., 1st Cir.), 101 Fed. (2d) 20; certiorari denied, 308 U. S. 561, determinative of the question before us. The *Pennie* case construed the California statute there in issue as eliminating entirely from the basic compensation of the employee amounts withheld as contributions to the state pension fund. We are not satisfied that that is a permissible construction of the Federal Retirement Act, which defines "basic salary, pay or compensation" as "the base pay of the position as fixed by law or regulation." *Dodge* v. *Board of Education* is inapplicable, as was pointed out in *Abrahams* v. *Wilson*, *supra*, which refers to "the dissimilarity of the Dodge Case, where the fund from which the pension was in dispute was contributed entirely by the state and not assisted by contributions from the salaries of teachers * * *." And the *MacLeod* case is distinguishable at least by the apparent absence from the Puerto Rican statute there under consideration of any provision for the creation of an account placing to the credit of the employee the amounts withheld from his salary; and by the further circumstance that the only question was whether the monthly payment to the employee after his retirement could be reduced below the figure provided upon the date of his retirement and not whether there existed authority to deprive the employee of minimum benefits consisting of the value of the contributions to the fund which were the equivalent of the amounts withheld from him.

The case which in our mind sheds the greatest light upon the question is *Dismuke* v. *United States*, 297 U. S. 167, which, except for *Boerner* v. *United States*, *supra* (footnote 3), and *Griffith* v. *Rudolph*,⁴

⁴ *Griffith* v. *Rudolph*, 54 App. D. C. 350, 298 Fed. 672, erroneously cited in the brief for petitioner Taylor as "*Rudolph* v. *United States*, 36 App. D. C. 379, 298 Fed. (2d) 672," did not involve the interest of the plaintiff in his withheld salary, but was a mandamus action, based upon a contention that he was immune from peremptory discharge by reason of vested rights in the future annuities.

alone actually deals with the Federal Retirement Act. The question was whether an action by a retired employee for payments of accrued annuity installments asserted to be due under that act could be maintained under the Tucker Act, which withheld jurisdiction of "claims for pensions" or "of cases brought to recover fees, salary or compensation for services." In holding that jurisdiction existed, the Supreme Court regarded as without merit any claim "that the annuities [as distinguished from the contributions] are 'salary or compensation'" and further: "We conclude that annuities payable under the Retirement Act are not pensions within the meaning of the Tucker Act," observing that:

* * * the term "pensions" commonly referred to the gratuities paid by the government in recognition of past services in the Army or Navy. The annuities payable under the Retirement Act are not gratuitous in that sense. The annuitant contributes to them by deductions from his salary or by actual payments into the fund, as in the present case, and the scheme of the Act is to provide for the payment of annuities, in part at least from contributions by employees, in recognition both of their past services and of services to be performed.

And in the course of the discussion of another issue the Court refers to the claim of the employee as the assertion of "a right which the statute creates." See also *Lynch* v. *United States*, 292 U. S. 571.

While the matter is certainly not free from doubt, we are inclined to the view, particularly in the light of the *Dismuke* case, that at least to the extent that it consists of contributions by the employee out of his basic salary, the payment provided by the Retirement Act is a true annuity comparable to one which might be subscribed for by any employer for the benefit of an employee and that it follows that if under such circumstances an employee on a cash basis is chargeable with the contribution to the cost of such an annuity made out of his salary, these petitioners were required to include the amount of the disputed withholding in their taxable income.

As to this issue, we think there is no longer room for argument. In *Renton K. Brodie*, 1 T. C. 275, a substantially similar question was disposed of in respondent's favor. We there said:

* * * In the instant case the failure of petitioners to receive in cash the amounts of the extra compensation fund which were used by the company to purchase the annuity contracts which were delivered to them was not due to their own volition. In fact they apparently were not consulted about the matter prior to the company's decision to purchase the annuity contracts. * * *

Under these circumstances and the authorities cited in *Richard R. Deupree*, *supra*. [1 T. C. 113] we do not think that it can be held that petitioners "constructively received," as those terms are generally understood, the cash which the company used in purchasing the annuity contracts. We do not think these petitioners were in the position to go to the company and say: "You have some money which, under the special remuneration plan adopted, I am entitled to receive in cash. * * *" However. while we do not think that the doctrine of constructive receipt as it is commonly understood can be correctly applied

in these proceedings, it is undoubtedly true that the amount which the Commissioner has included in each petitioner's income was used for his benefit, albeit not at his own direction, in the purchase of an annuity contract, and the contract so purchased was issued in the name of the annuitant and was delivered to him and was part of the plan for his additional remuneration. Do these facts result in the receipt of income in the amounts determined by the Commissioner? Respondent contends that they do, and he relies principally upon the broad and comprehensive language of section 22 (a), *supra.* In this contention we think respondent must be sustained.

\* \* \* \* \* \* ⊙

In the instant case the petitioners urge, as among their strongest reasons why the amounts in question should not be taxed as income to them, the fact that they did not have the free use and disposition of such funds and that the annuity contracts which they received could not be assigned and had no cash surrender value.

\* \* \* \* \* \* \*

The Board said in *N. Loring Danforth, supra,* [18 B. T. A. 1221] "That the purpose, plan and effect was to give petitioner this additional compensation for his services is manifest. The benefit was directly to him, and the corporation received no more benefit than any employer derives when it increases the compensation of its employee. \* \* \*"

\* \* \* \* \* \* \*

The Treasury has no regulations dealing specifically with the subject matter covered by the foregoing administrative rulings. Notwithstanding these prior administrative rulings, the Commissioner strongly insists in the instant proceedings that the amounts herein involved are taxable to petitioners under the broad and comprehensive provisions of section 22 (a), *supra.* As we have already stated, the statute being what it is and the facts being what they are, we think the Commissioner must be sustained.

It seems to us to follow that the disputed amounts withheld out of petitioners' salaries were, as the *Brodie* case declares, transformed into benefits created for the employees which were in the nature of compensation additional to that received in cash, and that these amounts are equally a part of petitioners' taxable income. We are accordingly of the opinion that respondent's determination was correct.

Petitioner Miller takes the position in his brief that in taxing these payments "prior to the great increases in taxes, no great injustice was done \* \* \*. With this change in the Retirement Act [made in 1942] and the increase in income taxes you [the Tax Court] have an opportunity to right the situation before injustice is done. Your petitioner prays, therefore, that you find that these deductions are not income until the employee's statutory expectancy is realized \* \* \*."

If such considerations are appropriate in a determination of this question, we think they lead rather to the conclusion at which we have already arrived. For employees, as a whole, are undoubtedly in a better position to discharge their tax obligations while they are in active service, receiving cash payments in substantial amounts, than after they have retired on the reduced income furnished by their annuities. And this is even more true in the case of an employee who dies

or leaves the service. who would otherwise be called upon to pay the tax on the entire accumulation in one year. If. therefore, the long-term best interests of the employees are to be consulted. and we can assume that Congress in enacting section 22 (a) and the Retirement Act had this situation in mind, it seems more reasonable to suppose an intention that the income tax attach on the small sums as they periodically arise, rather than later, on larger amounts, and, at least under present provisions, at proportionally higher rates.

Reviewed by the Court.

*Decisions will be entered for respondent.*

ARUNDELL. *J.*, did not participate in the consideration of or decision in this report.

STERNHAGEN. *J.*, dissenting: These taxpayers use the cash basis for their income tax returns, and the evidence shows that the amounts withheld from their pay are involuntary contributions which are not presently theirs and may not. in the present state of the law. be regarded as either actual or constructive income. This view, I think. is indicated by *Pennie* v. *Reis.* 132 U. S. 464; *MacLeod* v. *Fernandez.* 101 Fed. (2d) 20; *Griffith* v. *Rudolph.* 298 Fed. 672; *Dillis C. Knapp,* 41 B. T. A 23: *Renton K. Brodie.* 1 T. C. 275. In my opinion, the determination of the deficiencies should be reversed.