WADE ALLEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4032.  Promulgated April 30, 1946.

*Earl D. Burke, Esq.,* for the petitioner.
*William F. Robinson, Esq.,* for the respondent.

OPINION.

HARRON, *Judge*: Respondent determined that the net income derived from the operation of Arcade Theatre in 1941 was $9,166.06. Petitioner does not contest any adjustments made in determining that amount to be the net earnings of the business. Respondent included all of the above sum in the income of petitioner upon his determination that such income was taxable to petitioner under section 22 (a) of the Internal Revenue Code.

Petitioner alleges on brief that Margaret Allen, his wife, conducted the business of Arcade Theatre personally from 1937 until 1940, when she became ill; that she conducted the business in 1941 through an alleged manager of her own, Sylvia Manderbach; and that over a period of years she had invested in the business the profits of the business; and, finally, that petitioner made no contribution to the business in 1941 "except the simple booking of pictures for which services he received the sum of $500." The above argument of petitioner leads him to contend that none of the net income of the theatre in question in 1941 is taxable to him.

Petitioner, on brief, asks this Court to reverse respondent's determination solely upon the evidence adduced at the trial. He advances no argument of law and cites no authority in law to support his contention that he is not taxable on the income in question. The facts of record are contrary to the allegations made on brief, as set forth above.

The question is controlled by the cardinal rules of the law of Federal income taxation that income is taxable to the person who earns the income, *Lucas* v. *Earl*, 281 U. S. 111; *Burnet* v. *Leininger*, 285 U. S. 136; and that he who enjoys the economic benefit of income is taxable thereon, *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122.

The income in question was derived from a business in 1941 which depended solely upon the application of personal skill and personal attention. Such personal skill and attention was given by petitioner. The business had been developed over a period of ten years after 1930 by petitioner, who is experienced in the business activity of contracting for films, booking them, and showing them to the public. Even when Royal Oppenheim formed a corporation of Arcade Theatre in 1936, which had a corporate life of one year, petitioner continued to negotiate and execute all business contracts for the purchase and booking of the films which were shown in the theatre. His services and efforts have continued uninterrupted since 1930 in the business of Arcade Theatre.

From the evidence of record, we can only conclude that the operation of a motion picture theatre requires personal skill if any profit is to be derived. The essential service of obtaining the films is prerequisite to making money from showing the films. Also, equipment of a suitable kind must be selected, and a theatre must be suitable for the clientele. The Oppenheim family permitted petitioner to use part of the receipts from the business to purchase needed equipment, i. e., they did not supply certain needed equipment and furnishings during the ten-year period by the use of any funds other than the earnings of the theatre. The record shows that petitioner arranged for such purchases of equipment in years prior to 1941, title going to the Oppenheims, no doubt because equipment and furnishings became fixtures in the theatre. Whether or not such use of receipts of the theatre in earlier years affected the amount of the rent paid for the theatre is not shown by the record, but keeping up the equipment was a part of operating the business, and petitioner attended to such vital matters. Furthermore, he made the arrangements with the owners for renting the theatre and he worked out with them the amounts of rent to be paid, excepting, perhaps, in the year of 1936, when the corporation existed, and the arrangements for keeping the theatre equipped. He did all of these things in 1941. The manner in which the expenditures for purchasing equipment in years prior to 1941 was taken care of in the income tax returns filed for those years by petitioner is not shown by the record in this case.

Petitioner advanced no money of his own in building up the business, except $300 in 1930. He has so testified. His testimony indicates that he did not consider any of the receipts of the business in the earlier years which were used to replace outworn fixtures and equipment as his own money. And so, careful consideration of the evidence leads to the conclusion that in 1941 and before the profits of the Arcade Theatre were due primarily to the personal services and skill of petitioner. It has been held in cases involving much the same question as is presented here, that the earnings of a business which is carried on by the application of personal service and skill are taxable, under section 22 (a), to the person whose services and skill are employed in the business. See *Earp* v. *Jones*, 131 Fed. (2d) 292; *Schroder* v. *Commissioner*, 134 Fed. (2d) 346; *Mead* v. *Commissioner*, 131 Fed. (2d) 323; *Francis Doll*, 2 T. C. 267; affd., 149 Fed. (2d) 239; certiorari denied, 326 U. S. 725; *Frank J. Lorenz*, 3 T. C. 746; affd., 148 Fed. (2d) 527; certiorari denied, — U. S. — (Mar. 5, 1946); *M. M. Argo*, 3 T. C. 1120; affd., 150 Fed. (2d) 67; certiorari denied, 326 U. S. 762.

The evidence in this case shows clearly that the wife of petitioner did not have the knowledge and skill to perform the essential services in the business in question which produce a profitable result in such

business. Prior to 1940 she helped in small ways about the theatre in depositing money in the bank and writing checks, but such services were so minor, if not clerical, that it is an unreasonable argument that she has at any time conducted the business of Arcade Theatre. It is observed that a certificate of conducting business under an assumed name was filed on March 22, 1937, in the name of petitioner's wife, but the filing thereof is not proof that she was, in fact, conducting the business or was, even prior to 1941, the person who "earned" the income of the business. An employee, Sylvia Manderbach, was known to Royal Oppenheim, a witness, to have been the person who was always "on the job" in the office of the theatre in 1938, 1939, 1940, and 1941. Petitioner admits that in 1940 and 1941 the poor health of his wife confined her to her home most of the time and prevented her from engaging in work.

Time is not a large factor in the operation of the business in question, in the essential matters of arranging programs and obtaining films from day to day and week to week, according to petitioner's testimony. Once established, the business runs along in a somewhat automatic way. Thus in 1941 petitioner devoted only a few hours a day to the important work of both the Fine Arts Theatre and the Arcade Theatre. The running of the office, which has been referred to as "management," in the testimony and in the findings of fact, can be and was left to a competent employee at the Arcade Theatre. And so it is not determinative, in petitioner's favor, that petitioner needed to, and actually did, devote only a few hours each day to the essential phases of the conduct of the business in question.

The determinative factor is that the wife of petitioner, alleged to have operated and conducted the business, as the manager and *entrepreneur*, did not devote any time in the taxable year to the business, and that she had not devoted any vital skill or capital or managerial services to the business in prior years. She had not developed the business. Petitioner did. See *Commissioner* v. *Tower*, 327 U. S. 280, wherein the Supreme Court speaks of the tests to be applied to determine whether or not a wife has been engaged in a business so as to be regarded as the earner and owner of income. Those tests are said to be (1) the investment of capital originating with her; (2) substantial contribution to the control and management of the business; (3) the performance of vital additional services. Applying these standards to this case, it is concluded that the facts do not support a finding that the wife of petitioner was engaged in the business in question in 1941.

Petitioner could not "give" the business in question, which he had established, to his wife any more than he could endow her with his skill or attribute his activities to her. The only way that the wife of petitioner could operate and conduct the business in question, as is claimed,

was for her to actually devote her own skill and services to the business, services *of the kind required*, and of the *essential kind*. Petitioner's contentions lack merit, because no reasonable view of the facts can support them, and the fallacy thereof is found in what is said above. The formal execution of the documents dated January 2, 1941, do not metamorphose the real facts into the facts which are necessary to support the result claimed by petitioner. They are self-serving, particularly in their texts, containing statements which represent conclusions which can not be recognized in the determination of the issue to be decided here. They are not controlling of the question.

Petitioner was legally obligated to support his wife and minor child in 1941, even though there were marital disaffections. The earnings of the Arcade business were used for the support of his wife and child, for the purchase of the family residence, and for the operation of the family home, in which he had his residence, such as it was. His legal obligations were discharged by such use of the income of the business and, since he was thereby benefited, he enjoyed the income and he is taxable upon it. Whatever other uses were made of other parts of the income in question amounted to gifts from petitioner to his wife. The substance of his arrangement was none other than to assign his income to his wife. Such allocation of income within the family group does not relieve petitioner of tax liability. Furthermore, there is no evidence that, despite the arrangement, petitioner could not still exercise control of the income and take it himself.

It is held that petitioner is taxable on the income of Arcade Theatre in 1941. Respondent's determination is sustained. See *Ed. Dubinsky Durwood*, 6 T. C. 682.

*Decision will be entered for the respondent.*