Kjer, Appellant, vs. Department of Taxation, Respondent.*

*September 11—October 22, 1946.*

For the appellant there was a brief by *Lecher, Michael, Spohn & Best,* attorneys, and *Joseph R. Filachek* of counsel, all of Milwaukee, and oral argument by *Mr. George D. Spohn* and *Mr. Filachek.*

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

Fritz, J. The appellant, Louis I. Kjer, seeks a refund of $4.35 paid as income tax on $136.45, which he had included in his 1942 Wisconsin return of income. That sum was withheld under the Federal Civil Service Retirement Act of 1930, as amended, from Kjer's salary as an employee of the

* Motion for rehearing denied, with $25 costs, on December 18, 1946.

bureau of internal revenue. Upon Kjer's appeal from the assessor's denial of the refund, the Wisconsin board of tax appeals decided that the amounts withheld from Kjer's salary were "gross income" under the Wisconsin Income Tax Law; and upon a review under sec. 227.16, Wis. Stats., of the board's decision and order, both were affirmed by a judgment of the circuit court.

Upon this appeal from that judgment, Kjer contends: That the amounts withheld from his salary, under the Federal Civil Service Retirement Act of 1930 (as amended in 1942) (5 USCA, sec. 691 *et seq.*) did not constitute "gross income," as that term is defined in sec. 71.02 (2), Wis. Stats., because there was no such actual or constructive receipt by him of the withheld amounts as is necessary to the concept of "gross income;" and that those amounts were neither cash nor its equivalent and whether or not, when such amounts were so withheld, Kjer acquired rights which could not be divested or diverted by congress, there, nevertheless, was no such receipt thereof as is necessary to consider them gross income. Moreover, he contends that in the absence of a contractual provision or legislative enactment to the contrary, no right in the proposed benefits under the Federal Civil Service Retirement Act became vested in him at the time such amounts were withheld thereunder because the benefits might be diminished or denied by governmental authority prior to the actual accrual of such right upon his retirement or death; and that consequently the withheld amounts cannot be considered "gross income" of Kjer in 1942.

On the other hand the Department of Taxation contends that the construction of that Retirement Act, in harmony with its interpretation by federal tribunals, which the department should follow, indicates that it was the intention of congress, in enacting the act, to vest basic rights in the employees coming under it; and that, therefore, the amounts withheld from Kjer's salary constitute gross income which, as such, is tax-

able income under the federal and likewise the state income tax law.

In considering those contentions and whether the Department of Taxation should follow the construction and interpretation by federal tribunals of such of the provisions of the Federal Civil Service Retirement Act and of the Federal Income Tax Law, as are here material, it is important to determine at the outset whether there is any substantial difference between the meaning of the term "gross income" as defined in sec. 71.02 (2) (c) and (h), Wis. Stats., and the definition thereof in sec. 22 (a) of the Federal Internal Revenue Code, in so far as such definitions can be deemed involved in determining whether or not the amounts withheld from Kjer's salary were part of his gross income. In sec. 71.02 (2), Wis. Stats., "gross income" is defined to include:

"(c) All wages, salaries or fees *derived* from services, including services performed for the United States or any agency or instrumentality thereof. . . .

"(h) And *all other* gains, profits or *income of any kind derived from any source whatever* except such as hereinafter exempted."

In sec. 22 (a) of the Internal Revenue Code (26 USCA, sec. 22 (a)) it is provided:

" 'Gross income' includes gains, profits, and *income derived from salaries, wages,* or *compensation* for personal service (including personal service as an officer or employee of a state, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing) of whatever kind and in whatever form paid. . . ."

Although worded somewhat differently, the inclusion in "gross income," as defined in sec. 71.02 (2) (c) and (h), Wis. Stats., of "All wages, salaries . . . derived from services, including services performed for the United States" and of "all other . . . income of any kind derived from any source whatever except such as hereinafter exempted," is, so far as

applicable to the amount of Kjer's salary which is in question herein, substantially the same in effect as the inclusion in "gross income" as defined in sec. 22 (a), Internal Revenue Code of "income derived from salaries, wages, or compensation for personal service . . . of whatever kind and in whatever form paid." Although the federal government, in deducting, under the Retirement Act, the sums totaling $136.45 from Kjer's salary, did not in fact actually pay such sums to Kjer, the federal tribunals have concluded that under the applicable provisions in the Retirement Act and sec. 22 (a) of the Internal Revenue Code, amounts so deducted were in effect received by the employee as salary and therefore constitute "gross income" under the definition in sec. 22 (a) of the Internal Revenue Code. As reasons for that determination the court said in *Miller v. Commissioner* (4th Cir.), 144 Fed. (2d) 287, 289:

"When he (Miller) was employed as a civil-service employee he accepted such employment subject to all the conditions and provisions of law relating to civil-service employees, one of which is that he shall be deemed to consent and agree that three and one-half per centum of his salary shall be deducted and be used to purchase the retirement benefits granted by the act. That consent is as much a part of the conditions of his employment as any other provision of law relating thereto. The effect of his agreement is the same as if he had received his entire salary in cash, and then sent three and one-half per centum thereof to the civil service commission for the purchase of the annuity provided by law.

"But even if it should be considered that the employee did not receive the full amount of the $2,700 and paid $94.56 therefrom to purchase an annuity and secure the other protection afforded by the act he, under any view of the transaction, as a result thereof, received additional compensation in the form of economic benefits under the Retirement Act. These benefits take the place of the part of the taxpayer's salary which was withheld, and in any event, had an equal or greater value than the sum withheld and constitute income just as if the taxpayer had received his entire salary in cash."

In that case the federal circuit court of appeals (4th circuit) affirmed the decision in *Taylor v. Commissioner,* 2 T. C. 267, 268, in which the United States tax court's conclusion was based on the provision in sec. 10 of the Retirement Act, that,—

"Every employee coming within the provisions of this act shall be deemed to consent and agree to the deductions from salary, pay, or compensation as provided herein, and payment less such deductions shall be a full and complete discharge and acquittance of all claims and demands whatsoever for all regular services rendered by such employee during the period covered by such payment, except the right to the benefits to which. he shall be entitled under the provisions of this act. . . ." (46 U. S. Stats. at L. 476.)

For the reasons stated in *Taylor v. Commissioner, supra,* and approved in *Miller v. Commissioner, supra,* the assessor of incomes and Department of Taxation were warranted in concluding that the deducted amounts in question herein constituted gross income, unless there can be sustained Kjer's contentions that no right in the proposed benefits under the Retirement Act became vested in him, at the time those amounts were withheld thereunder, because such benefits are subject to diminution or diversion at any time prior to actual accrual on his retirement or death; and, consequently, they cannot be considered gross income of Kjer in 1942.

Those contentions cannot be sustained. As is stated in *Dismuke v. United States,* 297 U. S. 167, 169, 56 Sup. Ct. 400, 80 L. Ed. 561, in discussing the benefits created for the employee under the act in question, as enacted in 1930,—

"Section 8 (a) of the Retirement Act declares that, under conditions specified, the employees 'shall be entitled to an annuity payable from the civil-service retirement and disability fund. The provision is mandatory, expressed in terms of the right of the employee, which is inseparable from the correlative obligation of the employer, the United States. . . . the term 'pensions' commonly referred to the gratuities paid by the government in recognition of past services in the army or navy. The annuities payable under the Retirement Act

are not gratuitous in that sense. The annuitant contributes to them by deductions from his salary or by actual payments into the fund, as in the present case, and the scheme of the act is to provide for the payment of annuities, in part at least from contributions by employees, in recognition both of their past services and of services to be performed."

And as the circuit court of appeals stated in *Miller v. Commissioner, supra,*—

"There is no merit in the contention of the petitioners that in 1940, the employee had no vested rights under the Civil Service Retirement Act. In that year he had the right to receive an annuity upon retirement, and to receive a return of the amount withheld from his salary, with interest, upon separation from the service, or death. These rights were secured in consideration of contributions made from his salary, and at least to the extent of such contributions made, they could not be taken from him under the provisions of the act, and we may not assume that congress, if it could, would change the law so as to deprive him of the substantial rights acquired thereunder." (p. 290.)

And preceding that the court said,—

"As aptly said by the tax court in its opinion (in *Taylor v. Commissioner, supra*) : 'These aspects of the retirement plan seem to us to demonstrate that there have been purchased by the employee substantial rights, of a value which can in no event fall materially below the amount of his own contribution, which presently belong to him, and which are unequivocally provided for his ultimate benefit under whatever contingency and in whatever circumstance the occasion for that benefit should arise. They are in that respect comparable to and for our purposes indistinguishable from, an annuity contract, of which the employer constitutes itself the issuer, setting aside reserves for that purpose and making investments thereof comparable to those which would be employed by companies engaged in that business." (p. 289.)

In connection therewith the tax court said,—

"So considered we find nothing in the authorities dealing with this subject to convince us that petitioners could be de-

prived of the benefits to which by this legislation their own contributions entitle them." (p. 272.)

"While the matter is certainly not free from doubt, we are inclined to the view, particularly in the light of the *Dismuke Case,* that at least to the extent that it consists of contributions by the employee out of his basic salary, the payment provided by the Retirement Act is a true annuity comparable to one which might be subscribed for by any employer for the benefit of an employee and that it follows that if under such circumstances an employee on a cash basis is chargeable with the contribution to the cost of such an annuity made out of his salary, these petitioners were required to include the amount of the disputed withholding in their taxable income." (p. 274.)

But it is claimed on behalf of Kjer that the decisions in the *Dismuke, Miller,* and *Taylor Cases (supra)* construing the Retirement Act as stated above, have become inapplicable, by reason of the amendments in 1942, in the following respects: In sec. 12 (b) of the act, enacted in 1930, it was provided,—

"In the case of any employee to whom this act applies who shall be transferred to a position not within the purview of this act, or who shall become absolutely separated from the service before becoming eligible for retirement on annuity, the amount credited to his individual account shall be returned to such employee together with interest at four per centum per annum compounded on June 30 of each year: *Provided,* that when any employee becomes involuntarily separated from the service, not by removal for cause on charges of misconduct or delinquency, the total amount of his deductions with interest thereon shall be paid to such employee. . . ." (46 U. S. Stats. at L. 476.)

Then in 1942 this provision for such payments to employees who were so transferred or separated from civil service at any time before becoming eligible for retirement or annuity was changed by the following amendment so as to provide for such payment of the total amount of an employee's deductions

only when he becomes so separated from the service before completing five years of service, to wit:

Sec. 12 (b) "In the case of any officer or employee to whom this act applies who shall be transferred to a position not within the purview of this act, or who shall become absolutely separated from the service before he shall have completed an aggregate of five years of service computed in accordance with section 5 of this act, the amount of deductions from his basic salary, pay, or compensation credited to his individual account, together with interest at four per centum compounded on June 30 of each year shall be returned to such officer or employee: *Provided,* that when an officer or employee becomes involuntarily separated from the service, not by removal for cause on charges of misconduct or delinquency before completing five years of creditable service the total amount of deductions from his basic salary, pay, or compensation with interest at four per centum compounded on June 30 of each year shall be returned to such officer or employee. . . ." (5 USCA, sec. 724 (b).)

And in connection therewith it was provided in sub. (d) of sec. 12 of the Retirement Act, that,—

"In case an employee shall die without having attained eligibility for retirement or without having established a valid claim for annuity, the total amount of his deductions with interest thereon shall be paid, upon the establishment of a valid claim therefor, in the following order of precedence: First, to the beneficiary or beneficiaries designated in writing by such employee and recorded on his individual account; second, if there be no such beneficiary, to the duly appointed executor or administrator of the estate of such employee; third, if there be no such beneficiary or executor or administrator, payment may be made, after the expiration of thirty days from the date of the death of the employee, to such person or persons as may appear in the judgment of the civil service commission to be legally entitled thereto, and such payment shall be a bar to recovery by any other person." (5 USCA, sec. 724 (d).)

Under those amendments the deductions from the basic salary which are credited to the individual account of an employee may be withdrawn if he is transferred or separated from the civil service before completing five years of such employment; but the accumulated deductions of an employee, who continued in the service over five years before being so transferred or separated, are left in the fund and when he arrives at the retirement age he is entitled to such an annuity or benefit as is referable to the amount of the accumulated deductions so retained; or if he dies, without having attained eligibility for such retirement or established his claim for annuity, then the total amount of his deductions shall be paid to the beneficiary designated by the employee or to the executor or administrator of his estate. Thus, as to such an employee, it is evidently the intent under the statute and there is thereby vested a continuing and substantial right in the employee to the accumulated deductions and the annuity upon attaining eligibility for retirement, or, if he die prior thereto, the payment of the amount of his deductions to his estate or beneficiaries designated by him, etc. Consequently, instead of impairing the rights of such employees, the 1942 amendments evidently vested in them the right to also annuity protection which they did not have formerly.

It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.