RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; ANTONIO RIERA, Intervener.

No. 115.—Argued May 8, 1947.—Decided July 9, 1947.

*Luis Negrón Fernández, Attorney General,* and *Edgar S. Belaval,* special attorney of the Department of Justice, for petitioner. *Eulogio Riera* for intervener, complainant in the main proceeding.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

The Treasurer of Puerto Rico notified a deficiency to Antonio Riera, a taxpayer, for the fiscal year ending on December 31, 1944, because the latter had deducted from his net income the amount of $208. This amount had been retained by the Auditor of Puerto Rico from the salary which Riera received during said year from the Insular Government as attorney of the Land Authority of Puerto Rico.[1] Fifty per cent of that amount represented 3 per cent of Riera's salary retained and deposited in the Savings and Loan Fund of the Employees of the Insular Government of Puerto Rico created by virtue of Act No. 52 of July 11, 1921, (Laws of 1921, p. 374), as subsequently amended. The other 50 per cent represents 3 per cent of said salary retained to be deposited by the Treasurer of Puerto Rico in an account known as "Retirement Fund of the Officers and Employees of the Civil Service of Puerto Rico" created under Act No. 23 of July 16, 1935 (Spec. Sess. Laws, p. 126), as subsequently amended. The taxpayer sought a reconsideration which was denied whereupon he filed a complaint with the Tax Court, which was granted by said court pursuant to a decision rendered in a similar case of Celestino Domínguez Rubio. At the request of the Treasurer we issued the present writ to review the decision rendered.

Petitioner alleges that the Tax Court erred in deciding that the discounts made from intervener's salary do not constitute an income of the employee subject to income tax.

Pursuant to § 15(a) of the Income Tax Act, the words "net income" include, among other things, ". . . income derived from salaries, wages, or compensation for personal service (including in the case of the officers and employees of The People of Porto Rico or of any political subdivision

---

[1] It is an admitted fact that the taxpayer computed his net income on a cash basis during the year.

534

thereof, the compensation *received* as such), of whatever kind and in whatever form *paid,* . . ." (Italics ours.)

Petitioner urges that, although the intervener did not receive and was not paid his whole salary to which he was entitled, when he accepted his office he knew that he was under obligation to accept the provisions of Acts No. 23 of July 16, 1935, and No. 52 of July 11, 1921, both as amended, and that because of the benefits derived from these Acts he became vested with certain rights of certain value which were equivalent to having received his whole salary; that said Acts form part of the employment contract between the intervener and the Insular Government and that when he accepted his appointment he voluntarily accepted the discounts prescribed by said Acts.

The rights to which petitioner refers are as follows:

Act No. 52 of 1921:

". . . the right to reimbursement of the amounts discounted in case of resignation or dismissal and that, in case of death, said amounts shall be returned to their heirs (Act No. 52 of 1921, as amended by Act No. 150 of 1937); the right to obtain loans not to exceed one month's salary, on recommendation of their chiefs and the Board of Directors (Act No. 52 of 1921, § 8, as amended by Act No. 96 of 1925), payable in monthly installments of not less than 10 per cent of the salary (Act No. 52 of 1921, § 9, as amended by Act No. 96 of 1925), with annual interest at 6 per cent, (Act No. 52 of 1938, Special Session (*sic*)); the right to obtain extraordinary loans exceeding the amount of one month's salary under certain circumstances (Act No. 52 of 1921, § 11, as amended by Act No. 199 of 1942); the right to obtain special loans (Act No. 52 of 1921, § 13, as amended by Act No. 150 of 1937); the right to obtain insurance for death or physical disability at the employee's option, (Act No. 52 of 1921, § 20, as amended by Act No. 199 of 1942); the right to continue under certain circumstances the life insurance even after the employee has resigned or been dismissed from his office (Act No. 52 of 1921, § 21, as amended by Act No. 150 of 1937); the right, if he did not wish to continue with the insurance, upon resigning or being dismissed from his office, to receive, in addition to his savings account, 50 per cent of all the

payments that he might have made for the insurance, (Act No. 52 of 1921, § 22); the right to obtain mortgage loans and the right to establish cooperatives for the building of houses (Act No. 52 of 1921, § 23, as amended by Act No. 108 of 1939); and the right to have any of these amounts exempt from attachment or execution (Act No. 52 of 1921, § 26, as amended by Act No. 150 of 1937.)"

And under Act No. 23 of 1935 (II):

". . . the right to receive an annuity upon retirement from service by reason of age, physical disability, years of service, or involuntary separation (Act No. 23 of 1935 (II), §§ 4, 5, 6, 7, and 8); the right, in case of resignation or death prior to retirement, to the reimbursement of all payments made with interest at 3 per cent; and the right to have said annuity exempt from attachment or taxation (Act No. 23 of 1935 (II), § 17). Furthermore, the funds contributed by the employees were increased by an annual appropriation made by the Insular Government (Act No. 23 of 1935 (II), § 20), as amended by Act No. 195 of 1938)."

We shall first pass upon the meaning, which, according to prior decisions, has been given to the funds collected by virtue of the compulsory discount made to the employees in such a pension system as that established by Act No. 23 of July 16, 1935.

The funds accumulated from discounts made by the Treasurer from officers and employees in accordance with this Act are Government public funds. It was so held in *Pennie v. Reis*, 132 U. S. 464, in construing a California statute similar to ours, where it was provided that the salary of a member of the police force of San Francisco would be $102 a month and it authorized the treasurer of said city to "retain from the pay of each police officer the sum of two dollars per month to be paid into a fund to be known as 'the police life and health insurance fund.'" The Act further provided that upon the death of any member of the police force, there should be paid by the treasurer, out of said fund, to a legal representative, the sum of one thousand dollars; that in case any officer should resign due to bad health or bodily infirmity,

there should be paid to him from that fund the amount which he may have contributed thereto. Eleven years after this Act had been in force, the Legislature enacted, on March 4, 1889, another law creating the Police Relief, Health and Life Insurance and Pension Fund in several counties, cities, and towns of the State, and transferring to it the funds existing by virtue of the discounts made under the prior statute. The new law provided a new and different distribution of the pensions and insurance to be paid to the members of the police force.

On the death of a policeman on March 13, 1889 (nine days after the new Act had become effective), who had rendered services since 1869 and from whose salary of $102 there had been discounted two dollars monthly since the first Act was approved in 1878, his administrator demanded payment of one thousand dollars which was the insurance fixed by said Act. Payment was refused and he then applied to the court for a writ of mandamus against the treasurer. The Supreme Court of California sustained a demurrer against the petition and the Supreme Court of the United States, in affirming the judgment, stated the following:

". . . Notwithstanding, therefore, in this case, the petitioner avers that the deceased police officer contributed out of his salary two dollars a month, pursuant to the law in question, and, in substance, that the fund which was to pay the one thousand dollars claimed, was created out of like contributions of the members of the police, the court, looking to the statute sees that, in point of fact, no money was contributed by the police officer out of his salary, but that the money which went into that fund under the act of April 1, 1878, was money from the State retained in its possession for the creation of this very fund, the balance—one hundred dollars—being the only compensation paid to the police officer. Though called part of the officer's compensation, he never received it or controlled it, nor could he prevent its appropriation to the fund in question. He had no such power of disposition over it as always accompanies ownership of property. The statute, in legal effect, says that the police officer shall receive as compensation, each month, not exceeding one

hundred dollars, . . . and that, in addition thereto, the State will create a fund by appropriating two dollars each month for that purpose . . .

"Being a fund raised in that way, it was entirely at the disposal of the government, until, by the happening of one of the events stated—the resignation, dismissal, or death of the officer—the right to the specific sum promised became vested in the officer or his representative. It requires no argument or citation of authorities to show, that in making a disposition of a fund of that character, previous to the happening of one of the events mentioned, the State impaired no absolute right of property in the police officer. The direction of the State, that the fund should be one for the benefit of the police officer or his representative, under certain conditions, was subject to change or revocation at any time, at the will of the legislature. There was no contract on the part of the State that its disposition should always continue as originally provided. Until the particular event should happen upon which the money or a part of it was to be paid, there was no vested right in the officer to such payment. His interest in the fund was, until then, a mere expectancy created by the law, and liable to be revoked or destroyed by the same authority. The law of April 1, 1878, having been repealed before the death of the intestate, his expectancy became impossible of realization; the money which was to pay the amount claimed had been previously transferred and mingled with another fund, and was no longer subject to the provisions of that act. Such being the nature of the intestate's interest in the fund provided by the law of 1878, there was no right of property in him of which he or his representative has been deprived."

The opinion closed by saying that if the two dollars a month had been in fact paid to the policeman, and thus become subject to his absolute control and afterwards had been induced to contribute it to a fund on condition that, upon his death, one thousand dollars should be paid out of it, a different question would have been raised upon which the court expressed no opinion, but it ended by saying that "It is sufficient that the two dollars retained from the police officer each month, though called in the law a part of his compensation, were, in fact, an appropriation of that amount by the State each month to the creation of a fund for the

benefit of the police officers named in that law, and, until used for the purposes designed, could be transferred to other parties and applied to different purposes by the legislature.''

In *Dodge* v. *Board of Education,* 302 U.S. 74, it was held that an act merely fixing salaries of officers creates no contract in their favor and the compensation named may be altered at the will of the legislature and further, citing the case of *Pennie, supra,* that ''If, upon a construction of the statute, it is found that the payments are gratuities, involving no agreement of the parties, the grant of them creates no vested right.''

In *Luján* v. *Insular Police Commission,* 38 P.R.R. 52 and *Domenech* v. *Teacher's Pension Board,* 42 P.R.R. 584, we held, after citing among others the *Pennie* case, *supra,* that discounts made to officers and employees of the Insular Government for the pension fund do not constitute such a vested right to the pension that it may not be modified or abrogated by the Legislature.

In *Fernández* v. *Auditor,* 52 P.R.R. 867, we tried to distinguish the above cases on the ground that the public officer to whom a pension had been granted had a vested right which could not be affected by subsequent legislation which reduced his pension. However, the Court of Appeals for the First Circuit reversed our decision [2] relying, among other cases, on *Dodge* v. *Board of Education, supra,* and on *City of Dallas* v. *Trammell,* 129 Tex. 150, 101 S.W.(2d)1009, 112 A.L.R. 997. Applying the ruling in this last case it said (page 25) : ''It was held in the *Dallas* case, *supra,* that where the contribution is compulsory the fund so contributed in granting a pension from it is merely the transfer from one public fund to another, as the compulsory contribution and payment never comes in the possession or control of the employee or official, while in case of a voluntary contribution, the contribution becomes the property of the em-

---

[2] *MacLeod* v. *Fernández,* 101 F.(2d) 20.

ployee or official and to that extent, at least, he may acquire a vested right in the fund. In case of compulsory contributions, the fund never passes from the status of public funds, the Government has an unqualified right to *direct its disposition, and the employee never acquires any right therein; but it is subject to the control of the Government and may be modified or repealed by subsequent enactments.*" (Italics ours.)

Whatever may be our line of thought as to the case of *MacLeod* v. *Fernández,*[3] its reasoning, as well as that of the other cases mentioned above, answers petitioner's argument to the effect that the compulsory discounts made to the intervener constitute part of the salary received because of the expectancy to receive certain benefits. Petitioner's contention that there exists a contractual relation between the intervener and the Insular Government because the former accepted his employment with knowledge that certain discounts were to be made for the aforesaid fund is likewise untenable.

■ Petitioner cites *Miller* v. *Commissioner of Internal Revenue,* 144 F.(2d) 287 (C.C.A. 4th, 1944), decided by the Tax Court of the United States under the title *Cecil W. Taylor,* 2 T.C. 267, where it was decided that deductions made from an employee's salary for the Federal Civil Service retirement fund were part of his salary subject to the payment of income tax. That case is distinguishable from the present one. The United States Tax Court itself, when deciding it in the first instance distinguished it from the cases we have cited by saying:

"Questions of this general nature have come at one time or another before these and a number of other state courts, but the decisions are by no means uniform and, particularly in the light of their construction of legislation containing different provisions and of their application to situations presenting different facts, it would be idle to assert that they afford any real help in disposing of the

[3] See *Esteves* v. *Retirement Board,* 60 P.R.R. 96.

present proceedings. Nor are such cases as *Pennie* v. *Reis,* 132 U. S. 464; *Dodge* v. *Board of Education,* 302 U. S. 74, or *MacLeod* v. *Fernández* (C.C.A., 1st Cir.), 101 Fed. (2d) 20; certiorari denied, 308 U. S. 561, determinative of the question before us. The *Pennie* case construed the California statute there in issue as eliminating entirely from the basic compensation of the employee amounts withheld as contributions to the state pension fund. We are not satisfied that that is a permissible construction of the Federal Retirement Act, which defines 'basic salary, pay or compensation' as 'the base pay of the position as fixed by law or regulation.' *Dodge* v. *Board of Education* is inapplicable, as was pointed out in *Abrahams* v. *Wilson, supra,* which refers to 'the dissimilarity of the *Dodge* case, where the fund from which the pension was in dispute was contributed entirely by the state and not assisted by contributions from the salaries of teachers . . . .' And the *MacLeod* case is distinguishable at least by the apparent absence from the Puerto Rico statute there under consideration of any provision for the creation of an account placing to the credit of the employee the amounts withheld from his salary; and by the further circumstance that the only question was whether the monthly payment to the employee after his retirement could be reduced below the figure provided upon the date of his retirement and not whether there existed authority to deprive the employee of minimum benefits consisting of the value of the contributions to the fund which were the equivalent of the amounts withheld from him." 2 T. C. 267, 273.

The substantial difference between the Federal Retirement Act and the one under consideration lies in the fact that the discount made by virtue of the former not only becomes part of the "civil service retirement disability fund" but that the Act itself provides that said fund is "appropriated for the payment of annuities, refunds, and allowances provided in this Act," and that, pursuant to § 12(*a*), the amounts withheld "shall be credited to an individual account of such employee, to be maintained by the department or office by which he is employed . . . ." Act No. 23 of 1935, as amended, does not contain these provisions. The Court for the Fourth Circuit in the *Miller* case adopted the construction given by the Tax Court to that Act when saying, at page 289, that " 'These aspects of the retirement plan

seem to us to demonstrate that there have been purchased by the employee substantial rights, of a value which can in no event fall materially below the amount of his own contribution, which presently belong to him, and which are unequivocally provided for his ultimate benefit under whatever contingency and in whatever circumstance the occasion for that benefit should arise. They are in that respect comparable to, and for our purposes indistinguishable from, an annuity contract, of which the employer constitutes itself the issuer, setting aside reserves for that purpose and making investments thereof comparable to those which would be employed by companies engaged in that business.' '' And the Circuit Court continues saying: ''The decisions in cases where an employer has paid premiums on life insurance policies issued for the benefit of an employee are in point. In such cases it is held that the amount paid as premiums is presumed to be additional compensation for the employee's services, and that it constitutes income to the employee on the theory that he has received a benefit in the form of insurance protection as a substitute for the cash payment. (Citing authorities)''

Differently from the ruling in *MacLeod* v. *Fernández, supra,* the Court of the Fourth Circuit held in *Miller* v. *Commissioner* that under the Federal Retirement Act an employee has a vested right to an annuity upon retirement, and that the amount withheld from his salary be reimbursed, with interest, upon being dismissed, or at his death, and that ''These rights were secured in consideration of contributions made from his salary, and at least to the extent of such contributions made, *they could not be taken from him under the provisions of the Act, and we may not assume that Congress, if it could, would change the law so as to deprive him of the substantial rights acquired thereunder . . . .*'' (Italics ours.)

As we know, in *MacLeod* v. *Fernández,* the Court for the

542

First Circuit, in construing our Retirement Act, expressly decided that there was no vested right in an employee who received a pension under said Act and that the Legislature of Puerto Rico was free to alter its terms and even wholly dispose of the funds.

Whatever may be the weight of the decision in the *Miller* case, *supra,* we are bound to follow the Court of Appeals for the First Circuit. Besides, the difference existing between the Federal Retirement Act and ours, previously pointed out, shows that that case and the one at bar may be distinguished, similarly as the United States Tax Court did in distinguishing that of *MacLeod* v. *Fernández.*

We are of the opinion that the Tax Court did not err in deciding that the deductions made from the intervener's salary pursuant to Act No. 23 of 1935 are not part of his net income taxable under the Income Tax Act.

May the same thing be said as to the discount made under Act No. 52 of July 11, 1921, as subsequently amended? We think not.

Although according to the language of this Act the discount made from the salaries of the employees for the Savings and Loan Fund is likewise compulsory, the character of the same is different from that of the Pension Fund under Act No. 23 of 1935, not because of any interpretation given by a Federal or insular court, but because of the definite expression of the Legislature of Puerto Rico.

On May 1, 1929, the Legislature passed Joint Resolution [4] No. 39 (Laws of 1929, p. 472), whose title is as follows:

"To authorize the Board of Directors of the Savings and Loan Fund Association of the Employees of the Insular Government of

---

[4] This Joint Resolution, like each and all of the ones passed at any time by the Legislature of Puerto Rico prior to June 16, 1938, was approved, ratified, and confirmed in all its parts by the Congress of the United States in enacting at that time Act No. 641. It was given the same effect, validity and force as if it originally had been validly decreed and approved by the Governor in the form of an "Act". This action of the Congress was brought about by the decision in *Valiente & Co.* v. *Sancho Bonet, Treas.,* 50 P.R.R. 563, affirmed in *Sancho* v. *Valiente & Co.,* 93 F.(2d) 327 (C.C.A. 1st, 1937.)

Porto Rico to distribute the interest accumulated to date, and which may be hereafter collected, on loans and deposits in banks of the funds of the Association, among the members, *according to the amount which the latter may have in their savings account, on June 30, 1929, and for other purposes.*'' (Italics ours.)

The first, third and fourth Whereases of said resolution read thus:

''WHEREAS, The Savings and Loan Fund Association of the Em-. ployees of the Insular Government of Porto Rico is a cooperative plan operating under the auspices of the government, through legislation enacted by the Legislature of Porto Rico;

''*  *  *  *  *  *  *  *

''WHEREAS, The bank where the general funds of the Savings and Loan Fund Association of the Employees of the Insular. Government of Porto Rico are deposited, pays interest which increases the funds of the association;

''WHEREAS, *The funds* belonging to the Savings and Loan Fund Association of the Employees of the Insular Government of Porto Rico *belong exclusively to the members of the association;* etc.''

In its first Section it provides:

''The balance resulting from interest on the loans and on the deposits in the bank, on June 30, 1929, for the fiscal year 1928–29, shall be added to the previous remainder which, on July 1, 1928, amounted to fifty-one thousand, five hundred and seventy dollars and sixty-two cents ($51,570.62), and a dividend shall be declared proportionate to the percentage which said sum bears to the total of the amounts saved by the employees covered by Act No. 52 of 1921, as amended by Act No. 96 of 1925. *This dividend shall be credited to a special account which shall be known as 'Dividend Account.'*

''In the future, and at the end of each fiscal year, the net total obtained from interest, after the expenses of administration are deducted, *shall be divided among the total of the funds saved, and shall be credited in the same manner as in the previous year in the 'Dividend Account'; Provided,* That any time an employee dies or ceases to belong to the Association for any reason in accordance with the provisions of Act No. 52 of 1921, as amended in 1925, he shall have a right to receive as beneficiary, *in addition to his savings, an amount equal to the percentage declared as a dividend for each year*

*on the total amount of his savings in said year,* plus the percentage which represents the first dividend declared on the total amount that he had saved on June 30, 1929, if he was a member of the Association on that date.'' (Italics ours.)

The provisions copied above show the fundamental difference existing between the fund created by virtue of Act No. 52 of 1921 and the pension fund created by Act No. 23 of 1935. The Legislature has expressly admitted that the funds of the Savings and Loan Fund Association of the Employees of the Insular Government of Puerto Rico belong exclusively to the member employees inasmuch as said Association constitutes a co-operative plan of said employees which operates under the auspices of the Government by virtue of Act No. 52 of 1921. This Joint Resolution, which is now an Act, admits and provides that said funds are deposited in a savings account in the name of each employee, and in addition, there is credited annually to a dividend account of each employee an amount equal to the percentage declared as dividend for each year on the total amount of his savings in said year, said dividend springing from the net total obtained from interest on loans made to employees plus the interest paid by the bank where the funds of the Association are deposited after the expenses of the administration are deducted.

We are of the opinion that the legislative intent is clearly expressed in the sense that the fund created under Act No. 52 of 1921 has not the character of a public fund of which the Government may dispose, but that it was established since 1929, that this fund belongs exclusively to the employees who contribute to it with the 3 per cent discount from their salary. Furthermore, under this Act we have a similar provision to that contained in the Federal Act which was construed in the *Miller* case, *supra,* to the effect that each employee is credited in an account in his name with the amounts of his savings and of the annual dividends and that when

he ceases as an employee he (or, on his death, his estate) is entitled to be fully reimbursed with said savings and dividends. The latter do constitute vested rights in the employee, and we cannot presume that the Legislature would, if it could, change the statute to deprive him of said rights. Cf. *Miller* v. *Commissioner of Internal Revenue, supra.*

We are of the opinion that the Tax Court erred in deciding that the deductions made from the intervener's salary pursuant to Act No. 52 of 1921 are not part of his net income subject to taxation and, consequently, the decision appealed from is modified in the sense that the petitioner is entitled to collect the deficiency as to said deductions, and, as thus modified the decision is affirmed.

Mr. Justice Snyder dissents insofar as this Court holds that the funds contributed by the public employees to the Pension Fund of the Insular Government do not form part of the gross income of said employees, taxable under the Income Tax Act.